(No. 21481.—

THE TRULY WARNER COMPANY, Inc., Appellee, *vs.* KAUF-MAN HATS, Inc., Appellant.

*Opinion filed April 22, 1933—Rehearing denied June 13, 1933.*

ELIAS MAYER, and SIGMUND W. DAVID, for appellant.

FOLLANSBEE, SHOREY & SCHUPP, (MITCHELL D. FOL-
LANSBEE, CLYDE E. SHOREY, LOUIS SALANT, and FRED
BARTH, of counsel,) for appellee.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the
court:

This is an appeal by Kaufman Hats, Inc., from a judg-
ment of the superior court of Cook county in favor of the
Truly Warner Company in an action of debt for a breach
of covenant in a lease. The appeal comes to this court by
reason of the fact that a constitutional question is involved.

There was considerable pleading in the cause of a some-
what complicated nature, the declaration consisting of sev-
eral counts and amended counts, and several pleas and
amended pleas were filed thereto. The court sustained de-
murrers to several of the pleas and amended pleas, which
action of the court will be considered later in this opinion.

On January 25, 1921, the trustees of the last will and
testament of Levi Z. Leiter, deceased, the owners of the
premises located at the corner of Clark and Madison streets,
in Chicago, purported to lease the ground-floor store room
of said premises, known as 109 West Madison street, to
Benjamin H. Kaufman, of New York City, who was a re-
tail merchant of hats. This lease was for a term of five
years, from May 1, 1921, to April 30, 1926, inclusive, and
contained many provisions, among which was the follow-
ing, which is the basis of plaintiff's claim in this case: "That
if the possession of said demised premises, and every part
thereof, shall not be delivered up when said term shall end,
by limitation or in any other way, there shall be paid to
the parties of the first part, their heirs or assigns, at the
rate of treble the said rental for the time possession is so
withheld, and also all costs and expenses, including attor-
ney's fees, incurred in obtaining possession, and all damages

occurring in any way." On April 30, 1921, Kaufman Hats, Inc., was organized under the laws of the State of New York, and as such corporation the premises in question were occupied by it and continued to be so occupied from some time in 1921 until November 31, 1927, during which time rent was paid by Kaufman personally, for which he was re-paid by the corporation, up to May 1, 1926. On October 19, 1925, the Leiter trustees executed a lease to the Truly Warner Company, Inc., for a term from May 1, 1926, to April 30, 1931. This company had prior to May 1, 1926, occupied a store in the same building as the premises here in question, 109 West Madison street. On May 1, 1926, appellant did not vacate the premises, claiming that the Leiter trustees had rented them to it for a term commencing May 1, 1926. On May 3, 1926, the Truly Warner Company instituted a forcible detainer suit against Kaufman Hats, Inc., in the municipal court of Chicago. This suit was tried and a judgment rendered finding Kaufman Hats, Inc., guilty of unlawfully withholding from the Truly Warner Company, Inc., possession of the premises here in question. An appeal was taken to the Appellate Court for the First District, where the judgment of the trial court was affirmed. Thereafter appellee brought suit against appellant in the superior court of Cook county for damages because of the withholding of the premises from it by appellant from May 1, 1926, to December 31, 1927. In this suit it was claimed that appellee was entitled to recover from appellant three times the rental provided in the lease for a period of twenty months, or $45,000, together with interest thereon, less $25,000 which had theretofore been paid to it by the surety on appellant's appeal bond to the Appellate Court. Appellee recovered a judgment for $44,921, including $15,500 attorney's fees.

Certain counts of appellee's declaration, in addition to its allegations based upon the clause of the lease above set forth, contained, among other things, allegations setting

forth the proceedings in the forcible entry and detainer suit, and that such proceedings were *res judicata*. In several of its pleas appellant alleged as a defense that appellee was a foreign corporation, and that it had not complied with the conditions of the Corporation act requiring such corporation to apply for and procure from the Secretary of State a certificate authorizing it to transact business in this State; that at the time in question in this suit it was, and for some time prior thereto had been, transacting business in this State in violation of that act, and that by reason of section 94 appellee had no right to maintain this suit, and also that upon a review of the record in the forcible entry and detainer suit the Appellate Court for the First District adjudicated that the defense that the plaintiff was doing business in this State without the issuance of a certificate of authority from the Secretary of State of Illinois could not be availed of as a defense in the forcible entry and detainer suit, as by the record of said cause remaining in the Appellate Court would more fully appear. Appellee's demurrers to these pleas were sustained, and appellant electing to stand by its pleas, the cause was tried upon issues formed by the other pleadings.

The basis of appellee's demurrers to these pleas was that section 94 of the Corporation act was unconstitutional and invalid as against foreign corporations by reason of the unconstitutionality of sections 96, 101 and 105 of the general Corporation act, and it cites *O'Gara Coal Co.* v. *Emmerson,* 326 Ill. 18, as conclusive on this subject. Section 94 of the act was in nowise involved in that case. The O'Gara Coal Company was a New York corporation licensed in 1906 to transact business in this State and had been engaged in such business up until the commencement of the suit, in 1925. It had made its annual reports in accordance with the statutes existing at the times up to and including the years beginning July 1, 1923, 1924 and 1925. As originally organized the corporation was authorized to

issue, and did issue, 60,000 shares of stock of the par value of $100. On April 23, 1923, the corporation amended its charter in accordance with the laws of the State of New York, so that its authorized capital was increased to $16,-000,000 by the addition of 100,000 shares of the par value of $100. For the year beginning July 1, 1923, 69,376 shares of stock, and for the year beginning July 1, 1924, 69,534 shares, were outstanding. The corporation paid to the Secretary of State as a franchise tax for the years 1923 and 1924, each year, $3000, and for the year 1925, $3476.70, but the Secretary of State assessed additional franchise taxes, based upon the authorized capital stock of the corporation, for the months of March, April, May and June, 1923, and for the three years beginning on July 1, 1923, 1924 and 1925, to the amount of $10,935.67. This amount was paid under protest, and an injunction suit was instituted to prevent the Secretary of State depositing the moneys paid under protest with the State Treasurer. No question was raised in that case as to the validity of the law requiring the corporation to apply for and receive a certificate or as to the amount of the initial fee which should be paid therefor. The only question involved in that case was whether the annual franchise tax which the law provided should be paid for the coming year was valid, and as stated in the opinion in that case, "that question is whether section 105 discriminates between foreign corporations without any just basis of discrimination." The conclusions which were reached in that case are summarized in the opinion as follows:

"(1) The amount of capital stock which foreign corporations are authorized to issue by the States under whose laws they are organized is not a reasonable basis for the classification of such corporations for the purpose of determining the amount either of the initial fee for a certificate of authority to do business in Illinois or of the annual franchise tax where a substantial part of such stock has

not been issued, whether the stock of such corporations has a par value or is without a par value.

"(2) The number of shares into which the capital stock of foreign corporations may be divided is not a reasonable basis for classification of such corporations for the purpose of determining the amount either of the initial fee for a certificate of authority to do business in Illinois or of the annual franchise tax, and therefore an arbitrary valuation of the capital stock of no par value of such corporations at $100 a share, or any other definite amount a share, without reference to par value, sale price, market price, or any consideration other than number of shares, renders such classification discriminatory against corporations which have issued such stock at prices less than $100 a share and denies to them due process of law and the equal protection of the laws.

"(3) Sections 96, 101 and 105 of the general Corporation act are invalid as against foreign corporations."

The basis for this holding was that section 105 authorized the assessment of the tax, based upon authorized capital stock instead of issued capital stock, against all corporations alike, making no discrimination between domestic and foreign corporations, and that section 105 was also unconstitutional for the reason that its provision, "in the event that the corporation has stock of no par value, its shares, for the purpose of fixing such fee, shall be considered to be of the par value of $100 per share," was discriminatory between foreign corporations having shares of stock of no par value issued at different prices and in different amounts. It is to be again noted that section 105, and the provision just cited, only deal with the annual fee to be paid and not with the original fee for a certificate authorizing the corporation to do business in Illinois. It is also to be noted that the section 105 which was considered in the *O'Gara Coal Co. case* was not the original section 105 of the Corporation act, but was merely an act adopted in 1923 to

amend section 105 of the act of July 1, 1919, and that section 105 of the act of 1919 did not contain the provision with reference to stock of no par value above quoted, and as to which section 105 of the act of 1919 the complainant in the *O'Gara Coal Co. case* raised no question but paid its assessment. Section 105 of the act of 1919 was likewise amended by the act of 1921, and this amendment in 1921 did not contain the reference to the valuation of the no par value of stock at $100. Section 156 of the law of 1919 provided: "The provisions of this act, so far as they are the same as those existing statutes, shall be construed as a continuation thereof, and not as a new enactment; and a reference in a statute which has not been repealed, to provisions of law which have been revised and re-enacted herein, shall be construed as applying to such provisions as so incorporated in this act." Section 157 provided: "If any clause, sentence, paragraph or part of this act shall be adjudged by any court of competent jurisdiction to be invalid or unconstitutional, such judgment shall not affect, impair, invalidate or nullify the remainder of this act, but the effect thereof shall be confined to the clause, sentence, paragraph or part thereof immediately involved in the controversy, in which such judgment or decree shall be rendered."

The provision contained in section 94 that no foreign corporation which has not obtained a certificate from the Secretary of State authorizing it to do business in Illinois can maintain any suit or action, either legal or equitable, in any of the courts in this State upon any demand, whether arising out of contract or tort, was not originally a part of the Corporation act but was a part of an independent act, "An act to require every foreign corporation doing business in this State to have a public office or place in this State at which to transact its business, subjecting it to a certain condition, and requiring it to file its articles or charter of incorporation with the Secretary of State,

and to pay certain taxes and fees thereon," adopted in 1897, amended in 1899 and again amended in 1905, and became a part of the general revision of the Corporation act in 1917, and in each one of the amendments thereto or the revisions of the Corporation act after its incorporation therein it was provided, in substance, that the fee for returning the original certificate from the Secretary of State should be the same as that required of Illinois corporations, and in each act the fee for the original certificate from the Secretary of State was fixed on a different basis from that of the annual franchise tax, and in none of these acts was it assessed upon the entire authorized capital stock. Even in section 101, which was declared unconstitutional in the *O'Gara Coal Co. case,* it was provided that "each foreign corporation for pecuniary profit, other than an insurance company or building and loan company, in addition to the annual franchise fees and taxes hereinafter provided, shall pay to the Secretary of State for its certificate of authority to do business in Illinois the same fees provided by this act to be paid by a similar corporation incorporated under the laws of this State." Section 94 did not depend for its vitality upon either section 96, 101 or 105. The provisions of the law of this State relating to license fees prior to the enactment of the amendment to section 105 of the Corporation act in 1923 have been held valid by this court in *American Can Co.* v. *Emmerson,* 288 Ill. 289, and other cases, and by the Supreme Court of the United States in *Hump Hairpin Manf. Co.* v. *Emmerson,* 66 U. S. (L. ed.) 622. Section 105 was amended by the legislature in 1927, and that section as amended in 1927 is not in any manner involved in this case. In *People* v. *Fox,* 294 Ill. 263, it is said: "The rule regarding the construction of repealing clauses is based upon legislative intent. Where it is seen from the new act and the act sought to be repealed that it was the legislative intent that the repealing clause should in all events be valid such clause will be held to be valid,

but where it is seen that the repeal is intended to clear the way for the operation of the act containing the repealing ·clause and to displace the old law with the new, then, if the new law be unconstitutional, the repealing clause becomes dependent and inoperative and falls with the main purpose of the act containing it. An unconstitutional statute does not repeal a former law or part of law by implication, for such unconstitutional law being void is not inconsistent with any former law.—*People* v. *Butler Street Foundry Co.* 201 Ill. 236."

The invalidity of sections 96, 101 and 105 can have no effect on the validity of section 94 and the other sections requiring a foreign corporation to make application for a license to do business in this State and prescribing the form and contents of such application, as it cannot be said that the parts of those sections declared unconstitutional were such integral parts of the act that without them it would not have been enacted. (*People* v. *Monroe,* 349 Ill. 270; *Weksler* v. *Collins,* 317 id. 132.) That this is true is evidenced, by the fact that section 94 as originally enacted was independent legislation not in anywise connected with any act for the imposing of excise taxes upon foreign corporations.

The pleas alleging the failure of appellee to procure a certificate from the Secretary of State authorizing it to do business in the State of Illinois and referring to the adjudication of the Appellate Court on that subject in the forcible entry and detainer suit on their face stated a good defense, and the court erred in sustaining the demurrers thereto.

The judgment of the superior court is reversed and the cause remanded to that court, with directions to overrule those demurrers.

*Reversed and remanded, with directions.*