(Nos. 28125, 28126.—

HUGH S. McDOUGALL, *et al.*, Appellants, *vs.* ARTHUR C. LUEDER, Auditor of Public Accounts, *et al.*, Appellees. —WILLIAM E. CAHILL, Appellant, *vs.* ARTHUR C. LUE-DER, Auditor of Public Accounts, *et al.*, Appellees.

*Opinion filed January 17, 1945.*

Arthur A. Sullivan, and Jacob Shamberg, (William E. Cahill, of counsel,) all of Chicago, for appellant.

George F. Barrett, Attorney General, (William C. Wines, of Chicago, of counsel,) for appellees.

Mr. Chief Justice Fulton delivered the opinion of the court:

This case involves a consolidation of appeals from an order of the circuit court of Cook county and an order of the superior court of Cook county sustaining motions of the appellees to strike complaints filed by the appellants attacking the validity of an act entitled "An act in relation to the regulation of community currency exchanges, and the operators and employees thereof, and to make an appropriation therefor" (Ill. Rev. Stat. 1943, chap. 16½, par. 31, *et seq.*) and dismissing the complaints for want of equity.

The Community Currency Exchange Act became effective July 1, 1943. Section 1 of the act provides in part as follows: "For the purposes of this Act: 'Community cur-

rency exchange' means any person, firm, association, partnership or corporation, except banks incorporated under the laws of this State and National banks organized pursuant to the laws of the United States, engaged in the business of and providing facilities for cashing checks, drafts, money orders and all other evidences of money acceptable to such community currency exchange for a fee or service charge, or other consideration, or engaged in the business of selling or issuing money orders under his or their or its name or any other money orders (other than United States Post Office money orders, American Express money orders, Postal Telegraph money orders, or Western Union money orders), or engaged in both such businesses. * * * Nothing in this act shall be held to apply to any person, firm, association, partnership or corporation engaged in the business of transporting for hire, bullion, currency, securities, negotiable or non-negotiable documents, jewels or other property of great monetary value, nor to any person, firm, association, partnership or corporation engaged in the business of selling tangible personal property at retail who, in the course of such business and as an incident thereto, cashes checks, drafts, money orders or other evidences of money."

Section 2 provides that after October 1, 1943, no person, firm, association, partnership or corporation shall engage in the business of a community currency exchange without first securing a license to do so from the Auditor.

Section 3 provides: "No community currency exchange shall be permitted to accept money or evidences of money as a deposit to be returned to the depositor or upon the depositor's order; and no community currency exchange shall be permitted to act as bailee or agent for persons, firms, partnerships, associations or corporations to hold money or evidences thereof or the proceeds therefrom for the use and benefit of the owners thereof and deliver such

money or proceeds of evidence of money upon request or direction of such owner or owners; provided, that nothing contained herein shall prevent a community currency exchange from issuing money orders."

The appellants McDougall and Martin filed their complaint in the circuit court of Cook county alleging they did business as a partnership under the name of "McDougall & Martin Armored Car Check Cashing Service" in the city of Chicago, carrying on their business at two separate locations; that as part of the objects and among the activities and enterprises of the said partnership is the matter of cashing checks, drafts, money orders and all other evidences of money acceptable to them for a fee or service charge.

In the complaint filed by the appellant William E. Cahill in the superior court of Cook county, it was alleged that he was engaged in the business of cashing checks, drafts, money orders and other evidences of money acceptable to him and of issuing checks to the order of payees designated by the persons at whose instance and request the same are issued, for fees or service charges, under the name and style of "Cahill Bros. Currency Exchange;" that, in addition thereto, he acts as a depositee on depositors' orders and as a bailee at the request of bailors and that he accepts for payment and makes payment of bills issued by various public utility companies and other companies against those persons for whom he acts; that the complaint is filed for the benefit of others engaged in similar activities and similarly situated.

Both complaints alleged that said business and activities were not dangerous to the public directly or indirectly, but afforded facilities for the convenience and benefit of persons desiring to cash checks, drafts, money orders and other evidences of money, and that said business and activities did not affect the public health, public morals,

public comfort, public safety, or general welfare of the State, nor did they involve any inherent or innate fraudulent practices.

The complaints seek to declare the Currency Exchange Act unconstitutional on the ground that its attempts to regulate do not fall within the reasonable exercise of the police power of the State of Illinois, and that it violates the rights of the plaintiffs to liberty and the pursuit of happiness accorded as a privilege under the preamble to the Federal constitution and guaranteed by section 1 of article II of the constitution of Illinois; that it improperly and unreasonably discriminates against the appellants, since there is no regulation of the cashing of checks, etc., generally denying to them equal rights guaranteed by section 2 of article II of the Illinois constitution, and that section 1 of the act discriminates against them in providing that those persons or businesses who cash checks, drafts, money orders and other evidences of money, in the course of, and while engaged in, the business of selling tangible personal property at retail, are exempt from the provisions of the act; that this violates section 2 of article II and section 22 of article IV of the constitution of Illinois; that section 7, in providing that every community currency exchange have at all times on hand a minimum of $1500 of its own cash funds for the uses and purposes of its business, arbitrarily and unlawfully attempts to direct the amount of business each shall be prepared to do, and that the provisions of sections 5 and 6, requiring each currency exchange to furnish bond and to provide insurance policies, are contrary to sections 1 and 2 of article II of the constitution of Illinois and section 1 of the fourteenth amendment of the constitution of the United States; that the statute authorizes the Auditor of Public Accounts to make unreasonable search of the books and records of the exchanges, and subsection (c) of section 4 of the act delegates legislative power to the Auditor of Public Accounts without pro-

viding the terms and conditions under which he may act, contrary to section 1 of article IV of the constitution of Illinois.

In addition to the above objections, it is alleged in the complaint of Cahill that the statute has no application to the activities of those, together with Cahill, who issue checks drawn by them on moneys previously deposited in various banks and held to their credit, and that the statute does not regulate the issuance of checks, since checks are not money orders in the sense that the term is used in the act, checks being negotiable instruments with characteristics not attached to money orders; that if checks are construed within the term "money orders," then section 22 of article IV of the Illinois constitution is violated in that special privileges are granted by excepting from the application and operation of the act telegraph and express companies and certain other persons named in section 1 of the act, denying to appellants equal rights guaranteed by sections 1 and 2 of article II of the Illinois constitution and section 1 of the fourteenth amendment to the constitution of the United States; that section 3 of the act is void in granting special privileges to all persons not engaged in the community currency exchange business to carry on activities prohibited to persons engaged in the community currency exchange business.

Each complaint sought a declaration that the act was unconstitutional and void and prayed that appellees be restrained by injunction from in any manner attempting to enforce the provisions of the act against the appellants.

With these contentions both the circuit and superior courts of Cook county disagreed and a final order was entered by each sustaining a motion to strike the complaint and dismissing the complaint for want of equity.

The appellants here reiterate their objections to the act raised before the courts below, contending that the act in excepting the American Express, Postal Telegraph and

Western Union Telegraph companies from the provisions of the act grants special privileges and immunity to those companies, wrongfully denying to the appellants the equal protection of laws; that by section 3, special privileges are granted to others, contrary to constitutional prohibition; that appellants' business of cashing checks is of a beneficial nature from the public standpoint and not dangerous to the public and cannot be subjected to any police regulation whatever; .that the act does not apply to the business of issuing checks drawn on moneys previously deposited in banks and held to the credit of appellants and persons similarly engaged, and that arbitrary and legislative power is, by subsection (c) of section 4, vested in the discretion of the Auditor of Public Accounts.

It becomes advisable first to determine whether or not the Currency Exchange Act falls within the general powers of the legislature to pass laws for the protection of the public health, safety and morals and the promotion of the general welfare. The General Assembly has a wide discretion in the enactment of the laws within its police powers and, in pursuance of objects within the scope of its powers, may enact laws of limited or particular application so far as persons and property affected are concerned. Such a statute is valid when it applies equally and uniformly to all persons similarly situated, but it is in contravention of the equality clause of the Federal constitution and section 2 of article II of the State constitution where the classification or discrimination made by it is unreasonable or has no substantial relation to the object of the act. In discussing the extent of power which the legislature possesses in matters relating to police power, this court, in *People* v. *Weiner,* 271 Ill. 74, said: "The power of the legislature to pass laws for the preservation of good order or to promote public welfare and safety, or to prevent fraud, deceit, cheating and imposition, has always been recognized in this State. (*People* v. *Freeman,* 242 Ill.

373; *People* v. *Schenck,* 257 id. 384) * * *. A rightful exercise of the police power is not a violation of the fourteenth amendment even though property interests are affected. * * * The police power has been defined as that inherent and plenary power in the State which enables it to prohibit all things hurtful to the comfort, safety and welfare of society. * * * This power is very broad and far reaching, yet it is not without its restrictions. While the courts will not pass upon the wisdom of an act concerning the exercise of the police power, they will pass upon the question whether such act has a substantial relation to the police power. * * * It must have some relation and be adapted to the ends sought to be accomplished."

In the exercise of the police power, it is for the legislature to determine when the conditions exist calling for the exercise of that power, and when the legislature has acted, the presumption is that the act is a valid exercise of such power. (*People* v. *McBride,* 234 Ill. 146.) In case of doubt, every intendment is to be taken in favor of the validity of such enactment. *People ex rel. Kincaid* v. *School Directors,* 267 Ill. 172.

That the business of providing facilities for cashing checks, drafts, money orders and all other evidences of money falls within the police power of the State seems without question. The business of handling the people's money, issuing drafts, selling money orders under the name of the issuer and acting as a bailee in the payment of bills for a fee are endeavors requiring a certain amount of regulation and supervision. Any business conducted primarily or entirely by accepting funds of other people, undertaking to keep the funds intact for an indefinite length of time and the purchasing of paper, such as cashing checks or money orders, is one in which the public deserves more protection than only the judgment, skill and good luck of the proprietor to protect it against loss. The

opportunities for loss through embezzlements, larceny, the unauthorized use of funds, including bankruptcy through the mishandling of funds, is obvious. Reasonable regulation thereof falls within the powers of the legislature in the interests of the public safety.

A further contention of the appellants is that section 1 of the act is void in excepting from its application the American Express Company, Postal Telegraph Company, and the Western Union Telegraph Company, and in support thereof cite the case of *Wedesweiler* v. *Brundage*, 297 Ill. 228. There, the court construed section 15½ of the revision of the Banking Law, (Laws of 1919, p. 235,) prohibiting any natural person, firm or partnership from engaging in the business of transmitting moneys to foreign countries or buying and selling foreign money, except express, steamship and telegraph companies. It was there held that such exemption violated the provision of section 22 of article IV of the State constitution by granting to such companies a special privilege from which all other natural persons are excluded. The court there said: "No reasonable distinction exists for this proviso. It declares, in effect, that incorporated banks and express, steamship and telegraph companies, whether incorporated or not, may engage in the business of transmitting moneys to foreign countries, but no other natural person, firm or partnership may. * * * As between natural persons and partnerships on the one hand, and express, steamship and telegraph companies on the other, the distinction is not based upon any just reason."

We believe the act considered in that case is clearly distinguishable from the one under discussion. There, the express, steamship and telegraph companies were in direct competition with individuals in the business of foreign exchange, transmission of money to foreign countries and the transaction of business of that character was held to

be an unreasonable distinction and a violation of section 22 of article IV of the State constitution as well as of the equal protection of individuals under section 2 of the State constitution and section 1 of the fourteenth amendment to the federal constitution.

In the present case the General Assembly evidently had in contemplation purely local problems. The act is entitled "Community Currency Exchanges." In section 1. "Community Currency Exchange" is defined, and all through the act the word "community" is repeated and emphasized, showing without question that the plain intendment of the legislature was to regulate companies of a purely local character. The Western Union, the Postal Telegraph Company and the American Express Company, are all highly responsible institutions operating all over the world and are in no sense to be considered as local companies or companies engaged in community affairs. The General Assembly would surely never have passed the act if they had thought the said companies would be made subject to its rules and regulations.

We believe the placing of the express company and the telegraph companies in a class to be exempt from the provisions of the act was not, under the circumstances, an unreasonable classification and that the act is not unconstitutional by reason of such exception in section 1. *Stewart* v. *Brady,* 300 Ill. 425; *People* v. *Stokes,* 281 Ill. 159.

Appellants further complain that section 3, in prohibiting currency exchanges from accepting money or evidences of money as a deposit to be returned to the depositor upon his order and in prohibiting the exchange from acting as a bailee or agent to hold money or evidences and to deliver same to others upon the order of the owner thereof, is contrary to the equal protection clause of the constitution. That this provision is a reasonable regulation follows without discussion. To allow the currency exchanges to engage

in such activities would be to allow them to engage in the banking business without the regulations and responsibilities attendant thereupon.

To the provision of the Currency Exchange Act requiring that each exchange shall have at all times a minimum of $1500 of its own cash funds available for the cashing of checks, appellants take further exception and ask what reasonable relation exists between this and the police power. That this is a reasonable regulation again follows without question, the fund being provided for the purpose of reasonably guaranteeing the cashing or honoring of the papers, money orders or checks issued by the exchange and, to a reasonable extent, assuring a sufficiency of funds on hand therefor.

Appellant Cahill argues that the act does not apply to the business of issuing checks drawn on moneys previously deposited in banks and held to the credit of appellant and persons similarly engaged; that section 1 applies only to the selling and issuance of money orders which exempts said appellant from the operation of the act. Section 1 provides that the term "community currency exchange" means any person engaged in the business of selling or issuing money orders under his or their or its name or any other money orders. This is sufficiently broad to take in the issuance of a check which is an order of money and the technical interpretation sought after by said appellant is not well taken.

The appellants contend, finally, that the act vests in the discretion of the Auditor of Public Accounts arbitrary power unregulated by any rules or conditions, there being, therefore, an unauthorized delegation of legislative function. By section 4 of the act, the application must contain the name and address of the applicant, the county and municipality where located and "such other information as the Auditor may require." Section 10 covers the qualifications of the applicant and provides that no application

shall be denied unless the applicant has had notice of a hearing and an opportunity to be heard thereon and that, if the application is denied, the Auditor shall prepare and keep on file in his office a written order of denial containing his findings with respect thereto and the reasons supporting the denial and shall furnish a copy to the applicant by mail within five days after the filing of such order. A review of the order of the Auditor of Public Accounts is provided by section 22 of the act. Section 15 gives the Auditor of Public Accounts the power to revoke a license for failure on the part of the licensee to comply with any order, decision or finding of the Auditor, or for the violation of any provision, regulation or direction made by the Auditor, or because of the existence of any fact or condition which, if it had existed at the time of the original application, would have warranted the Auditor in refusing the issuance of a license. Appellants contend that these provisions give an unauthorized delegation of legislative function to the Auditor, in that no limitation exists as to what information he may require in the application and that the licensee, after securing a license, holds his license subject to the whim of the Auditor, since nowhere in the act is there a provision for any order, decision or finding to be made according to any standard nor is any fact or condition designated or specified; that no limitation exists upon the Auditor whatsoever. Section 19 gives the Auditor authority to make and enforce such reasonable relevant regulations, directions, orders, decisions and findings . as may be necessary for the execution and enforcement of the act and provides that all such regulations and directions shall be filed in a permanent book or record and printed for the benefit of applicants and licensees.

The legislature may authorize others to do that which it cannot. do itself in the carrying out of valid laws. (*Block* v. *City of Chicago,* 239 Ill. 251.) The power to make a law and the conferring of authority and discre-

tion as to its execution, which authority is to be exercised under and in pursuance of the law, mark the true distinction between powers which the legislature can delegate and those which it cannot delegate. (*People ex rel. Gamber* v. *Sholem*, 294 Ill. 204.) Arbitrary power, under the rules of law in this State and elsewhere, cannot be delegated by the legislature. *Noel* v. *People,* 187 Ill. 587.

Subsection (c) of section 4 of the act, in requiring an application to do business as a community currency exchange to contain "such other information as the Auditor may require," does not undertake to prescribe the actual terms, conditions and qualifications necessary for an applicant to meet in order to be licensed under the terms of the act. The Auditor is left without any restraint whatsoever to interpret that phrase. It is possible that each succeeding Auditor may place substantially different interpretations on the meaning of the section with the result that applicants may at all times be subject to varying requirements. Subsection (c) of section 4, therefore, becomes vague, indefinite and uncertain and confers upon the Auditor arbitrary, unlimited and unrestrained power in direct conflict with the constitutional command that the legislature may not delegate its legislative function to any person or body. *Chicagoland Agencies, Inc.,* v. *Palmer,* 364 Ill. 13; *People* v. *Beekman & Co.* 347 Ill. 92.

We have repeatedly held that, to be valid, an act may not be vague, indefinite and uncertain, but must be complete when it leaves the legislature and be sufficiently explicit to advise everyone what his rights are under it and how he will be affected by its operation. *Chicagoland Agencies, Inc.,* v. *Palmer,* 364 Ill. 13; *Mayhew* v. *Nelson,* 346 Ill. 381; *People ex rel. Scholes* v. *Emmerson,* 325 Ill. 357.

There remains for determination, however, the question whether our view of the invalidity of subsection (c) of section 4 of the act necessitates the destruction of the

entire act. The fact that a part of an act is unconstitutional does not require that the remainder shall be held void unless all the provisions are so connected as to depend upon each other. The valid and invalid provisions may even be contained in the same sentence and yet be perfectly distinct and separable so that the former may stand though the latter fall. If, when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of being executed wholly independently of that which is rejected, it must be sustained. When the invalid subsection (c) of section 4 is stricken out, the portion of the act which remains is complete in itself and capable of being executed wholly independently of that which is rejected, and the invalidity of this provision does not, therefore, render the entire remainder of the act invalid, as there is no presumption that the General Assembly would not have enacted the remainder of the statute without subsection (c) of section 4. *Weksler* v. *Collins*, 317 Ill. 132; *Truly Warner Co.* v. *Kaufman Hats, Inc.* 352 Ill. 541.

The argument of the appellants that, after securing a license, the licensee holds the privilege to do business subject to the whim of the Auditor and that no limitation exists upon the Auditor whatsoever, is without merit. The act makes ample provision for the execution of such reasonable rules and regulations as seem necessary to carry out the purposes of the act. Review by the courts of the question as to whether such rules and regulations are reasonable or not, is amply provided for by section 22.

The provisions of subsection (c) of section 4, above referred to, are void and must be rejected, but the remainder of the act is complete in itself and must be sustained. With the above exception, the decrees of the circuit and superior courts of Cook county are thus affirmed.

*Decrees affirmed.*