CURRENCY SERVICES, Inc., et al. v. MATTHEWS et al.

Civ. No. 2067.

United States District Court W. D. Wisconsin.

April 10, 1950.

7.

Dougherty, Arnold & Waters, Suel O. Arnold and E. J. Philipp, Jr., Milwaukee, Wis., and Carl Flom, Madison, Wis., for plaintiffs.

Thomas E. Fairchild, Attorney General of Wisconsin, Stewart G. Honeck, Deputy Attorney General, and Gordon Samuelsen, Assistant Attorney General, for defendants.

Before LINDLEY, Circuit Judge, and STONE and TEHAN, District Judges.

LINDLEY, Circuit Judge.

This action, pursuant to Sections 2281 and 2284, Title 28 United States Code Annotated, seeks to restrain defendants, the Commissioner of Banks and the Attorney General of Wisconsin, from enforcing the Wisconsin Community Currency Exchange Act, Section 218.05, Wisconsin Statutes. That statute, enacted in 1945, provides that " * * * no person, firm, association, partnership or corporation shall engage in the business of a community currency exchange without first securing a license * * * ." The term "community currency exchange" is defined as "any person, firm, association, partnership or corporation (except state and national banks, and credit unions operating under chapter 186, Wisconsin Statutes), engaged in the business of and providing facilities for cashing checks, drafts, money orders and all other evidences of money acceptable to such community currency exchange for a fee or service charge, or other consideration, or engaged in the business of selling or issuing money orders under his or their or its name or any other money orders (other than United States post-office money orders, American Express money orders, Postal Telegraph money orders, or Western Union money orders), or engaged in both such businesses."

Under the statute, an application for license to operate a community currency exchange, which must be accompanied by a

fee of $100 to cover cost of investigating the applicant, must, within 30 days, be granted or denied by the Commissioner, who must also make annual investigations of the business of each licensee, who is required to pay a fee of $20 for each day or part thereof required to complete such examinations. A successful applicant, in addition to the investigation fees, must pay an annual license fee of $50, file with the Commissioner a surety bond in the principal sum of $5,000, and submit policies insuring him against loss by burglary, larceny, robbery, forgery or embezzlement in such amount as shall be fixed by the Commissioner. Not more than one place of business may be operated under the same license, but a licensee may be granted additional licenses for each separate agent upon the latter's compliance with the provisions governing the original issuance of a license; and no community currency exchange can be conducted as a department of another business but must be an entity, financed and conducted as a separate business unit.

Plaintiffs, a Wisconsin corporation organized to engage in the business of issuing money orders in that state but not yet licensed to do so as required by the statute, and an individual retail druggist, who expresses a desire to become an agent of the corporation in the conduct of that business, contend that the act in so far as it provides for regulation of sale and issuance of money orders, other than United States post-office money orders, American Express money orders, and Western Union money orders, discriminates against plaintiffs and grants to American Express and Western Union (with which the company which formerly issued Postal Telegraph money orders has merged), a virtual monopoly, in violation of the Fourteenth Amendment's requirement of "equal protection of the laws." Plaintiffs also aver that the license and investigation fees mandatorily required by the statute are so excessive as to be prohibitive, so that their inevitable effect is to prevent any person from engaging in the business of conducting a community currency exchange without loss of capital, thus operating to deprive plaintiffs of their property without due process of law. Defendants maintain that the exemptions are based upon reasonable classification and do not violate the Constitution's equal protection clause; thus they deny that the effect of Section 218.05 is to deprive plaintiffs of their property without due process of law.

It is well settled that a state has the power to classify businesses and occupations carried on within its boundaries for licensing and taxation purposes, Louis K. Liggett Co. v. Lee, 288 U.S. 517, 53 S.Ct. 481, 77 L.Ed. 929, 85 A.L.R. 699, and that any such classification, so long as it is not arbitrary and capricious but bears a reasonable relation to the object of the legislation, does not impinge upon the equal protection of the laws guaranteed by the Fourteenth Amendment, Bayside Fish Flour Co. v. Gentry, 297 U.S. 422, 56 S.Ct. 513, 80 L.Ed. 772. It is equally clear that the courts, resolving all doubts as to the constitutionality of a statute in its favor, Interstate Commerce Commission v. Oregon-Washington Ry. & Nav. Co., 288 U.S. 14, 53 S.Ct. 266, 77 L.Ed. 588, will, in a case where the statute is reasonably susceptible of two interpretations, adopt that construction which renders the act constitutional rather than that which would result in its invalidity, Arkansas Natural Gas Co. v. Arkansas Railroad Commission, 261 U.S. 379, 43 S.Ct. 387, 67 L.Ed. 705. Plaintiffs, then, have the burden of proving that the statutory classification embodied in Section 218.05 is not merely unwise but unreasonable.

Plaintiffs assert that it is the law of Wisconsin that a statutory classification based on existing circumstances only, or so constituted as to preclude addition to the numbers included within a class, is discriminatory and unconstitutional. If this be true,—and a number of Wisconsin cases have stated this rule in broad language, Johnson v. City of Milwaukee, 88 Wis. 383, 60 N.W. 270; State ex rel. Risch v. Board of Trustees, 121 Wis. 44, 98 N.W. 954; State ex rel. Ford Hopkins Co. v. Mayor and Common Council, 226 Wis. 215, 276 N.W. 311,—it would seem to follow that plaintiffs must prevail, for Section 218.05 is certainly so constituted as to preclude addition to the members of the class ex-

pressly exempted from those provisions of the statute regulating the sale and issuance of money orders. However, the act of Congress under which this court has been convened, Sections 2281 and 2284, Title 28, United States Code Annotated confers on it no jurisdiction to enjoin enforcement of a state law which offends merely the provisions of a state constitution; it is only when the statute is repugnant to the United States constitution that its enforcement may be enjoined by this court. Consequently, we are concerned only with the question as to the validity of the statutory classification, viewed in the light of the provisions of the Fourteenth Amendment.

 It is quite clear that, whatever may be the rule in Wisconsin, a statutory classification which results in a closed class does not automatically render a statute void under the equal protection clause of the Fourteenth Amendment; if there is a reasonable basis for the classification, the statute is valid. Watson v. State of Maryland, 218 U.S. 173, 30 S.Ct. 644, 54 L.Ed. 987. Examining the Wisconsin statute with this test in mind, the exclusion of state and national banks and credit unions operating under special statutes of Wisconsin, all of which are already subject to regulation by appropriate state or federal agencies, from the definition of the term "community currency exchange", seems to us a valid and reasonable exercise of legislative discretion.

 We turn to the exemption accorded Western Union, American Express, and United States post-office money orders[1]. It is obvious that a state legislature is without authority to regulate the exercise of a sovereign function of the United States government, State of Arizona v. State of California, 283 U.S. 423, 51 S.Ct. 522, 75 L.Ed. 1154, and it seems well established that issuance of United States post-office money orders is a governmental rather than commercial function. Bolognesi v. United States, 2 Cir., 189 F. 335, 36 L.R.A., N.S., 143, certiorari denied 223 U.S. 726, 32 S.Ct. 525, 56 L.Ed. 632; United States v. North-

western National Bank & Trust Co. of Minneapolis, D.C., 35 F.Supp. 484; consequently, the Wisconsin legislature, lacking authority to regulate the sale of postal money orders, had no alternative but to exempt them from the provisions of Section 218.05. And the exemption accorded Western Union, whose operations are subject to regulation by both the Federal Communications Commission and the Wisconsin Public Service Commission and whose principal business is of a substantially different nature from that intended to be regulated by the Wisconsin act, can hardly be said to have been unreasonable. Consequently, plaintiffs' contention that the statutory classification is discriminatory is, in final analysis, dependent upon the reasonableness of the exemption accorded American Express.

Plaintiffs aver and the proof shows that American Express conducts its money order business in substantially the same manner as the plaintiff corporation proposes to do, through agents, who are, for the most part, like plaintiff Lassa, proprietors of retail stores. Defendants, however, assert that American Express, operating on a worldwide basis and with a universal reputation for financial solidity and responsibility, is unique in its organization and mode of operation, in a class by itself, and that the Wisconsin legislature was justified in recognizing this unique characteristic and in exempting it from the provisions of the statute.

Assuming arguendo that its long-standing reputation for financial responsibility might possibly constitute ample reason for exempting American Express from payment of the initial investigation fee and from necessity of compliance with the other statutory provisions incidental to procuring a license to enter into the business of selling or issuing money orders, it does not seem to us to be a reasonable ground for exempting it for all time from payment of the annual license and investigation fees which its competitors are compelled to pay even after they have been investigated and found by

---

1. Postal Telegraph's merger with Western Union makes it unnecessary to consider the reasonableness of the exemption of money orders issued by the former.

the defendant Commissioner to be trustworthy and reputable, as required by the statute to enable them to procure a license in the first instance.[2]

■ While it is true that American Express operates on a world-wide scale, this does not alter the fact that its Wisconsin operations are not at all different from those contemplated by plaintiff corporation and would be subject to the provisions of the statute if carried on by any one other than American Express or its agents. Thus the 700 agents of American Express are exempt from any fees, whereas, if plaintiff corporation had 700 agents, their annual investigation fees would be at least $14,000, their original investigation fees $70,000 and their annual license fees $35,000. In such a situation, we think it clearly discriminatory to require plaintiff and its agents to pay substantial annual fees for licenses, to submit to periodic investigations at their own expenses, and to forbid their agents selling or issuing money orders in conjunction with the maintenance of any other business, when at the same time American Express, in a like operation, is exempt from all such annual fees and from the necessity of complying with the other regulations embodied in the statute, and its agents are permitted to engage in such other vocations as they see fit.

It is pointed out that the Supreme Court of Illinois has upheld the constitutionality of the Illinois Community Currency Exchange Act, Smith-Hurd Stats. c. 16½, § 31 et seq., on which the Wisconsin statute is modeled, in McDougall v. Lueder, 389 Ill. 141, 58 N.E.2d 899, 156 A.L.R. 1059. This decision rests largely on the court's conclusion that "the plain intendment of the Legislature was to regulate companies of a purely local character" and that "the placing of the express company * * * in a class to be exempt from the provisions of the act was not, under the circumstances, an unreasonable classification", McDougall v. Lueder, supra, 389 Ill. at page 151, 58 N.E.2d at page 904, a conclusion which seems to us to place undue emphasis on the use of the word "community" and to fly in the face of the all-inclusive language employed to define the term "community currency exchange." However, irrespective of the soundness of the court's conclusion with respect to the legislative intent, it is to be observed that plaintiffs in that case were engaged in the business of cashing checks, drafts, and money orders —i. e., the business ordinarily carried on by a complete currency exchange, whereas the plaintiff corporation in the instant case avers that it desired to engage only in the business of selling and issuing money

2. It would appear that, whether the statutory provisions requiring the payment of annual license and investigation fees were intended to protect the public against financial irresponsibility on the part of those engaged in the business of selling or issuing money orders, or whether they are exacted for the privilege of engaging in that business in the State of Wisconsin, the result is the same. If the former purpose be attributed to the legislature which enacted the Law, the substantiality of the annual license fee, coupled with the provision that only one place of business may be operated under one license, lends credence to plaintiffs' assertion that the statute was intended to prohibit rather than regulate the business, for the requirement that a licensee give a surety bond and insure himself against loss is certainly designed to afford protection to the public; to exact, in addition, annual fees which are not exacted from

a licensee's competitor, and to free that competitor from compliance with the other statutory provisions designed to protect the public, relying solely on the competitor's past reputation for financial responsibility—which, it goes without saying, is hardly an absolute guarantee of future financial responsibility—would seem to be an unconscionable discrimination, violative of the equal protection clause of the Fourteenth Amendment. Similarly, if the annual fees are imposed for the privilege of engaging in the business of selling money orders, it is certainly discriminatory to exact those fees from one person engaged in that business but not from his competitor. That the law is prohibitive seems apparent from the fact that a typical druggist testifies that his annual profits as an agent are $3.50. Such an agent paying $100 and $50 and, annually, at least $20 could not remain in the business of selling money orders.

orders. This seems to us to be a significant distinction. If plaintiff corporation were operating an ordinary currency exchange, as described in the first half of the first sentence in Section 218.05 (1) (b), or if it were selling money orders in conjunction with the operation of such a business, it probably could not complain of the exemption accorded American Express, for then it might well be argued that there would then be substantial differences between the two which might justify the latter's exemption from the class of which plaintiff would be a member. It is the inclusion, in the definition of the term "community currency exchange", of one who, though not engaged in the check-cashing business ordinarily designated by that term, is "engaged in the business of selling or issuing money orders", coupled with the exemption of a company engaged in that very business, which, it seems to us, renders the statute discriminatory and unconstitutional *as applied to the plaintiff corporation or to any other person or firm engaged in the business of selling or issuing money orders but not in the ordinary business of a currency exchange.*

We might well observe that, in McDougall v. Lueder, 389 Ill. 141, at page 150, 58 N.E.2d 899, 156 A.L.R. 1059, the court distinguished Wedesweiler v. Brundage, 297 Ill. 228, 130 N.E. 520, on the ground that the parties were not, in the McDougall case, in direct competition as they were in the Wedesweiler case. Here it is undisputed that American Express' operations in issuing money orders are in direct competition with those contemplated by plaintiffs. Consequently the Wedesweiler case, rather than the McDougall case, is applicable to the facts of the case at bar. In the Wedesweiler case the court said, 297 Ill. at pages 237 and 238, 130 N.E. at page 523: "As between natural persons and partnerships on the one hand, and express, steamship, and telegraph companies on the other, the distinction is not based upon any just reason. * * * the unreasonable distinction made in the proviso * * * deprives the appellees of the right to continue the business in which they are engaged without due process of law, and deprives them of the

equal protection of the laws, in violation of * * * section 1 of the Fourteenth Amendment of the federal Constitution."

With respect to plaintiffs' contention that the statute deprives them of their property without due process of law, it is apparent that the state has authority to regulate the business in which plaintiffs desire to engage, and that the wisdom of employing any particular mode of regulation is a matter for legislative rather than judicial determination. Southwestern Oil Co. v. State of Texas, 217 U.S. 114, 30 S.Ct. 496, 54 L.Ed. 688. Here, then, it does not appear that the statute is in itself violative of the due process clause in its attempt to regulate the business, for it is not the attempt to regulate which is condemned; it is the discriminatory application provided by the law and the regulations promulgated under it which are fatal.

An injunction shall issue restraining defendants from enforcing, against plaintiffs, Section 218.05, Wisconsin Statutes, for such time as plaintiffs engage in the business of selling or issuing money orders and refrain from engaging in other business activities controlled by the statute.