**Leonard PETITT et al., Respondents,**

v.

**Lyman FIELD et al., Appellants.**

**No. 48139.**

Supreme Court of Missouri,
Division No. 1.

Dec. 12, 1960.

John M. Dalton, Atty. Gen., Julian L. O'Malley, Asst. Atty. Gen., for appellants.

Ben W. Swofford, Laurence R. Smith, Hammond C. Woods, Kansas City, Swofford, Smith & Waisblum, Kansas City, of counsel, for respondents.

HYDE, Judge.

Declaratory judgment action to have declared unconstitutional and void House Bill 238 enacted by the 1959 General Assembly (Sale of Checks Law, Secs. 405.010–405.150, 1960 Pocket Part, V.A.M.S.) and to enjoin its enforcement. The court's decree so declared and ordered a permanent injunction, and defendants have appealed.

The Act was entitled "An Act relating to the definition, licensing and regulating of the sale and issue of checks, drafts and money orders in this state as a service for a fee or other consideration, providing for investigation, licensing and regulation by the Commissioner of Finance of Missouri of persons engaged in such business providing certain exemptions to its application based upon classification of business conducted providing for judicial review of certain orders of the Commissioner of Finance and prescribing penalties for its violation." Plaintiffs claim Sec. 3, subd. B makes the act unconstitutional as discriminatory class legislation, depriving them of due process and equal protection of law and grants special and exclusive rights, privileges and immunities in violation of the 14th Amendment to the U. S.

Constitution, Article I, Secs. 2 and 10, and Art. III, Sec. 40(28), (30), Mo.Constitution, V.A.M.S. Section 3 is as follows:

"Section 3. A. No person shall sell or issue checks in this state as a service for a fee or other consideration without first obtaining a license from the commissioner pursuant to the provisions of this Act, provided, however, that this Act shall not apply to the receipt of money by an incorporated telegraph company at any office or agency of such company for immediate transmission by telegraph.

"B. No license shall be issued or renewed to any person who is engaged in any business the major portion of which involves the processing, manufacture or purchase and sale of commodities or articles of tangible personal property."

Plaintiffs are retail merchants engaged in the purchase and sale of commodities or articles of tangible personal property; and bring this action on their own behalf and on behalf of others similarly situated. The parties stipulated that the Act is "intended to exercise the police powers of the State with reference to licensing and regulation of sale and issue of checks, drafts and money orders as a service for a fee and that such field is a proper one for the exercise of the police power and there is a need therefor." Written applications for licenses were required to be made to the Commissioner of Finance (Sec. 5), "accompanied by an investigation fee of $500" (Sec. 6); and by a corporate surety bond of $25,000 (Sec. 7). An annual license fee of $500 was also required (Sec. 10); and a licensee could conduct business at several locations through agents or employees who were not required to be licensed (Sec. 11). It was stated (Sec. 4) that the Act should not apply to banks, trust companies or savings and loan associations or to "the Government of the United States or any department or agency thereof."

Plaintiffs' evidence showed that between 50 and 75 individual merchants engaged in such service in Jackson County, about 87 in St. Louis, and some in other cities such as St. Joseph and Springfield. This service was rendered mostly to workers, who did not have bank accounts and who would cash pay checks after banking hours, taking money orders usually for such purposes as paying accounts to utility companies, finance companies, mortgage companies or for rent. A charge of a few cents (maximum 50 cents on money orders up to $100) was made for issuing money orders by one of plaintiffs (operating two drug stores) who said his net profit from this service had been $2,303.64 in the last eleven months. He also said that this service created customers' good will and increased his sales of merchandise. An agent for a licensee would not get more than 40% of the charge for this service. It was shown that only ten licenses had been issued by the commissioner but that those licensees had 2271 listed agents.

■ Defendants contend Sec. 3, subd. B in its exclusion from licensing designates a broad class and therefore cannot be held to have made an arbitrary or unreasonable classification, citing such cases as ABC Liquidators, Inc. v. Kansas City, Mo. Sup., 322 S.W.2d 876 (prohibiting Sunday auctions); Poole & Creber Market Co. v. Breshears, 343 Mo. 1133, 125 S.W.2d 23 (prohibiting sale of filled milk); Bellerive Investment Co. v. Kansas City, 321 Mo. 969, 13 S.W.2d 628 (limiting storage of automobiles in buildings occupied as living quarters). However, as plaintiffs point out persons operating an advertising agency, accountant, barber shop, bowling alley, broker, collection agency, insurance agency, laundry, night club, parking garage, pool hall, travel agency, real estate office, theatre and many other service or amusement businesses, as well as those in the business of transporting persons or goods, would be eligible for licensing. Likewise, persons engaged in the purchase and sale of commodities or articles of tangible per-

sonal property would be eligible for licensing if such activities did not constitute "the major portion" of their business. Thus disqualification for licensing even of one carrying on a mercantile business would not depend on the kind of business engaged in but on the amount of such business in proportion to any other kinds of business activities carried on by him. If 49% of a person's business was buying and selling goods, he could be licensed but if it was 51% he could not be. We can find no reasonable basis for such a classification. "Arbitrary selection can never be justified by calling it classification." Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 22 S.Ct. 431, 439, 46 L.Ed. 679. Of course, if it were provided that each licensed check exchange must be a separate entity conducted apart from any other business, trade or profession, as required in the Illinois law described in Morey v. Doud, 354 U.S. 457, 461, 77 S.Ct. 1344, 1347, 1 L.Ed.2d 1485, we would have a different situation because it would be reasonable to place such a business in a class of its own. (See also Currency Services, Inc. v. Matthews, D.C., 90 F. Supp. 40, 42, stating similar provision in the Wisconsin law.) This, of course, has been done with the banking business. (Chapters 362–364, RSMo, particularly Sec. 362.420 RSMo, V.A.M.S.) However, as the Morey case shows, it is arbitrary discrimination violating the Equal Protection Clause of the 14th Amendment to make exclusions not based on differences reasonably related to the purposes of the Act. Defendants contend this purpose was to protect the public by separating the check and money order writing business from the mercantile business on the theory that the funds so received might be used by merchants in financing their mercantile business and thus impair the financial responsibility of such writers. However, persons engaged in other businesses or occupations the major portion of which was not sale of goods could also use funds received in check and money order writing

to finance their operations. Therefore, permitting the latter and not the former to be licensed would have no reasonable relation to this purpose. Thus Sec. 3, subd. B would not meet the test of the Equal Protection Clause of the 14th Amendment or of Sec. 2, Art. I, Missouri Constitution. Furthermore, any merchant (without any requirement for licensing or inspection) could receive money and issue money orders at his place of business as an agent of a licensee, under this Act.

The same result would be reached (arbitrary discrimination) under the requirements of Sec. 40 of Art. III, Mo.Const., which likewise requires reasonable classification to make a statute a general rather than a prohibited special law. In Reals v. Courson, 349 Mo. 1193, 164 S.W.2d 306, 307, we said: " 'A statute which relates to persons or things as a class, is a general law, while a statute which relates to particular persons or things of a class is special' * * *. 'The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes, that makes it special, but what it excludes.' * * * If in fact the act is by its terms or 'in its practical operation, it can only apply to particular persons or things of a class, then it will be a special or local law, however carefully its character may be concealed by form of words.' " See also Laclede Power & Light Co. v. City of St. Louis, 353 Mo. 67, 182 S.W.2d 70; McKaig v. Kansas City, 363 Mo. 1033, 256 S.W.2d 815.

In State on Inf. of Taylor v. Currency Services, Inc., 358 Mo. 983, 218 S.W.2d 600, 602, we considered the validity of Sec. 7890, RS 1939, which prohibited corporations other than those "formed under or subject to the banking laws of this state or the United States" from certain specified activities which were part of banking. While we held this part of the statute valid, we held invalid the further provision therein which prohibited any corporation "except an express company having contracts

with railroad companies for the operation of an express service upon the lines of such railroad companies, or a transatlantic steamship company, or a telegraph or telephone company" from "receiving money for transmission * * * by draft, traveler's check, money order or otherwise." We said this was "unconstitutional and void because not embraced in the title of the 1915 Act, and for unreasonable and arbitrary classification." The reasons we stated for so holding were as follows: "It excludes all other companies falling naturally within the class, such as steamship or airplane companies operating in interstate or intrastate trade or across oceans other than the Atlantic; also bus and truck companies and companies operating armed and armoured cars for the transmission of payrolls, etc. The classification is not based upon the licensing, inspection, regulation, financial responsibility or business methods of the companies favored and is arbitrary and unreasonable." It is our view that this is true here because the exclusion from licensing of some persons engaged in the purchase and sale of commodities and tangible personal property is not based on inspection, regulation, financial responsibility or business methods of such persons, as is true with all other persons regardless of the business in which they may be engaged. It seems unnecessary to discuss plaintiffs' due process contentions because the right to regulate the business of issuing checks and money orders for a fee is conceded and it is the discriminatory application provided by the law that is constitutionally objectionable.

■ However, we also find in this case, as in the Currency Services case, that the mercantile exclusion (Sec. 3, subd. B) is not expressed in the title (hereinabove set out) to the Act as required by Sec. 23, Art. III, Const. The title states that certain exemptions to its application are provided; and these are immediate transmission of money by telegraph companies (Sec. 3, subd. A), which is different from sales of checks, drafts or money orders, and sales by banks, trust companies and savings and loan associations (Sec. 4) regulated by other statutes, and sales by the United States Government, certainly not subject to state licensing. See Currency Services, Inc. v. Matthews, supra, 90 F.Supp. loc. cit. 43. However, while these are exemptions from the requirement of licensing as the title indicates, there is nothing in the title to intimate that a limited group of persons are absolutely excluded from any opportunity to be licensed at all, solely because of being engaged in a certain usual kind of business when persons in every other kind of business, trade or profession could be licensed. There was no such exclusion in House Bill 238 as originally introduced but it was put in the House Committee Substitute which was passed with no reference to any exclusion from licensing in its title. Therefore, on the authority of the Currency Services case and cases therein cited (218 S.W.2d loc. cit. 604), we must hold the title is insufficient to cover the exclusion injected into the Act by Sec. 3, subd. B.

■ The final question is whether the unconstitutionality of Sec. 3, subd. B renders the whole act unconstitutional. Defendants say that the purpose of the Act was to regulate a type of business that affects a large portion of the public; that Sec. 3, subd. B may have been considered as an additional safeguard for the protection of the public; and that, with this exclusion removed, merchants would be included in the licensing provisions of Sec. 3, subd. A. Defendants say the test is whether, "after separating that which is invalid, a law in all respects complete and susceptible of constitutional enforcement is left, which the Legislature would have enacted if it had known that the exscinded portions were invalid," citing State ex rel. Audrain County v. Hackmann, 275 Mo.

534, 543, 205 S.W. 12; Poole & Creber Market Co. v. Breshears, 343 Mo. 1133, 1150, 125 S.W.2d 23; State ex inf. Hadley v. Washburn, 167 Mo. 680, 697, 67 S.W. 592. Plaintiffs point out that the Act contained no severability clause and cite 11 Am.Jur. 847, Sec. 156, stating: "In the absence of a legislative declaration that invalidity of a portion of a statute shall not affect the remainder, the presumption is that the legislature intends the Act to be effective as an entirety." But see State ex rel. Bixby v. City of St. Louis, 241 Mo. 231, 247, 145 S.W. 801. Plaintiffs contend that to hold the Act valid without the exclusion of merchants would broaden its scope and make it apply to the very persons to whom the Legislature intended it should not apply, by authorizing licensing of such excluded persons; citing Preisler v. Calcaterra, 362 Mo. 662, 243 S.W.2d 62; State ex rel. Transport Mfg. & Equipment Co. v. Bates, 359 Mo. 1002, 224 S.W.2d 996; State ex rel. McDaniel v. Schramm, 272 Mo. 541, 199 S.W. 194; State ex rel. Rolston v. Chicago, B. & Q. R. Co., 246 Mo. 512, 152 S.W. 28. See also 11 Am.Jur. 855, Sec. 161; Connolly v. Union Sewer Pipe Co., supra, 22 S.Ct. loc. cit. 441. These cases do hold that broadening the scope of an Act to make it apply to those whom the Legislature never intended it to apply (and here to whom they said it should not apply) would be in conflict with and violate legislative intent. We cannot say that a construction which would authorize licensing persons, whom the Legislature said should not be licensed, would leave the Act in conformity with legislative intent. Therefore, it seems the only reasonable conclusion would be that the Legislature would not have enacted this Act, if it had known Sec. 3, subd. B was invalid; so we must and do hold the entire Act unconstitutional.

The judgment is affirmed.

All concur.