In re CO PETRO MARKETING GROUP, INC., Debtor.

COMMODITY FUTURES TRADING COMMISSION, Appellant,

v.

CO PETRO MARKETING GROUP, INC., and Irving Sulmeyer as Trustee of Co Petro Marketing Group, Inc., Appellees.

BAP No. 80–0037.

Bankruptcy No. 80–04457LA.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Jan. 22, 1981.

Decided April 20, 1981.

David R. Merrill, Washington, D. C., for appellant.

Ronald S. Orr, Gibson, Dunn & Crutcher, Los Angeles, Cal., for appellees.

## OPINION

Before DAVIS, KATZ and HUGHES, Bankruptcy Judges.

EDWARD E. DAVIS, Bankruptcy Judge:

This appeal, brought by the Commodity Futures Trading Commission [hereinafter referred to as the Commission] from an order of the bankruptcy court in favor of Co Petro Marketing Group, Inc., the debtor in a chapter 11 reorganization, and Irving Sulmeyer, the trustee, presents two issues. First, whether the bankruptcy court erred in denying the Commission intervention in the debtor's chapter 11 case to permit it to move to dismiss the debtor's petition for an order of relief where the Commission alleged that the debtor was a commodity broker and therefore not entitled to reorganize under chapter 11 of the Bankruptcy Code. The second issue raised in this appeal is whether the bankruptcy court's finding that the debtor was not a commodity broker was erroneous. This panel has jurisdiction of the appeal pursuant to 28 U.S.C. § 1482 (1978).

On March 21, 1980 the Commission filed suit against Co Petro Marketing Group, Inc. in the United States District Court for the Central District of California to enjoin Co Petro's sale of contracts for the purchase of gasoline. Co Petro sold gasoline directly to retail, industrial, and commercial users; it also bought gasoline on the spot market and offered contracts for the sale of the spot market gasoline to its customers. Under the contracts the buyer appointed Co Petro

as agent to buy a specified amount and grade of gasoline at a specified price for delivery on a future, agreed upon date. The buyer was required to pay a percentage of the contract price at the time the contract was entered, that amount would constitute liquidated damages in the event of cancellation. The buyer was to notify Co Petro that it would take delivery of the gasoline and pay the balance of the purchase price under the contract or that it would not accept delivery and request Co Petro to resell the product on its behalf on the spot market. The resale purchaser paid the spot market price at the time of the sale, the original buyer then received the difference between the resale price and the contract price.

In the proceeding before the district court the Commission alleged that the gasoline contracts were actually commodity futures contracts and were being offered and sold in violation of sections 4 and 4h of the Commodity Exchange Act, 7 U.S.C. §§ 6, 6h (1980), since they were not offered on a board of trade designated as a contract market and were not executed by or through a member of a contract market. The district court concluded that the contracts were commodity futures contracts and were traded in violation of the provisions of the Commodity Exchange Act. The district court entered an order on May 7, 1980 permanently enjoining Co Petro from engaging in transactions involving petroleum related commodity futures contracts and appointed a receiver to collect Co Petro's assets.

On May 19, 1980 Co Petro filed a petition for an order of relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174 (1978). The receiver appointed by the district court was appointed trustee by the bankruptcy court. The Commission notified the bankruptcy court by letter of its intention to intervene and on May 30, 1980 filed a Notice of Appearance and Election and a motion to dismiss. Both documents were served on the appellees. In its motion the Commission alleged that the debtor could not avail itself of the chapter 11 reorganization provisions since it was a com-

modity broker. Following a hearing on the motion to dismiss the court entered its order finding that the Commission's failure to file a motion to intervene precluded intervention and deprived the Commission of standing to move for dismissal notwithstanding its recognition that the Commission had a special interest in the determination of whether the debtor was a commodity broker and prohibited from reorganizing by 11 U.S.C. § 109(d) (1978). The court, however, addressed the issues related by the parties to determine whether it had jurisdiction over the chapter 11 proceeding and in effect ruled on the Commission's motion to dismiss even though it had determined that the Commission did not have standing to move to dismiss. The bankruptcy court concluded that Co Petro was not a futures commission merchant within the meaning of § 2(a)(1) of the Commodity Exchange Act, 7 U.S.C. § 2 (1980), since it did not sell its futures contracts "on or subject to the rules of any contract market." Thus, Co Petro was not a commodity broker, as defined by 11 U.S.C. §§ 101(5) and 761 (1978), and was not prohibited from reorganizing under chapter 11 of the Bankruptcy Code by 11 U.S.C. § 109(d) (1978).

The Commission brought this appeal challenging both the court's holding that its failure to file a motion to intervene precluded intervention and thereby deprived it of standing to move to dismiss and the court's refusal to dismiss the case based on its finding that the debtor was not a commodity broker.

Rule 24, Fed.R.Civ.P., applicable to bankruptcy proceedings by virtue of Fed. R.Bankr.P. 724, governs intervention and provides for intervention as of right and for permissive intervention. The rule also prescribes procedural prerequisites for intervention. Non-statutory intervention as of right under rule 24(a)(2) may be granted where the applicant demonstrates a direct or pecuniary interest in the subject matter of the action. *Nuesse v. Camp*, 385 F.2d 694, 699–704 (D.C.Cir.1967); *Atlantis Development Corp. v. United States*, 379 F.2d 818

(5th Cir. 1967). The Commission, having no personal, financial, or pecuniary interest in the property in custody of the bankruptcy court, did not establish that it was entitled to intervene as of right under rule 24(a)(2). *See Securities and Exchange Commission v. United States Realty & Improvement Co.*, 310 U.S. 434, 459–60, 60 S.Ct. 1044, 1054–55, 84 L.Ed. 1293 (1940).

A court may permit intervention under rule 24(b)(2) upon timely application "when an applicant's claim or defense and the main action have a question of law or fact in common." In *Securities and Exchange Commission v. United States Realty & Improvement Co., supra*, the Supreme Court addressed the issue of intervention in circumstances analogous to those presented in this appeal. The SEC sought to intervene and move to dismiss a petition for an arrangement under chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701–799 (1970 & Supp.1978) (current version at 11 U.S.C. §§ 1101–1174) (1978); the district court permitted intervention, but the court of appeals reversed. The Supreme Court pointed out that the SEC's interest is a public one and stated that the SEC's claim or defense founded on that interest had a question of law in common with the bankruptcy proceeding that satisfied the rule 24(b)(2) requirements for permissive intervention. The Court concluded: "[W]e think it plain that the Commission has a sufficient interest in the maintenance of its statutory authority and the performance of its public duties to entitle it through intervention to prevent reorganizations, which should rightly be subjected to its scrutiny from proceeding without it." *Id*. at 460, 60 S.Ct. at 1055.

The appellant's interest is similar to that of the SEC in the United States Realty Case. *See* 7 U.S.C. §§ 5, 6a, 24 (1980); 11 U.S.C. § 762(b) (1978). Because of that similarity, appellant ought to be deemed to be "a party in interest" as that term is used in 11 U.S.C. § 1109(B) (1978). Otherwise, the Court would be in the anomalous position of the appellant not being able to intervene in a proceeding to prevent the very thing Congress intended, that is, to prevent

a futures commodity broker from reorganizing under chapter 11.

■ Appellate review of an order denying permissive intervention is limited to a determination of whether the court clearly abused its discretion. *In re Transvision, Inc.*, 217 F.2d 243 (2d Cir. 1954), *cert. denied*, 384 U.S. 952, 75 S.Ct. 440, 99 L.Ed. 744 (1955); C. Wright & A. Miller, 7A Federal Practice and Procedure § 1923 at 630 & n.78 (1972).

■ The procedure must be followed in seeking intervention is established by Fed. R.Civ.P. 24(c). One seeking intervention must serve a motion to intervene stating the grounds therefor on the parties to the proceeding. The motion must be accompanied by a pleading setting forth the claim or defense underlying the request for intervention. The Commission filed and served a motion to dismiss, which satisfies the pleading requirement. The Commission however, did not file a document captioned "Motion to Intervene." Rather, it filed a Notice of Appearance and Election. The Commission stated in its notice that it sought intervention pursuant to the principles of the United States Realty Case and 11 U.S.C. § 762(b) (1978), which permits the Commission to raise and appear and be heard on any issue in a case under chapter 7. Stating that a formal motion to intervene should have been filed, the bankruptcy court refused the Commission intervention, notwithstanding its finding that the Commission had a special interest in intervening in the reorganization.

The Commission's notice of appearance and election, having stated the bases upon which intervention was sought, satisfied rule 24(c). The motion and pleading requirements of the rule are intended to provide notice to the parties to a proceeding in which intervention is requested of the grounds for which it is sought, *see International Brotherhood of Teamsters v. Keystone Freight Lines*, 123 F.2d 326 (10th Cir. 1941), which the Commission's notice and pleading did. Neither appellee objected in the bankruptcy court to the procedure by

**550**

which the Commission sought to intervene; thus, they waived any objection they might have had on that ground. *See Klein v. Nu-Way Shoe Co.*, 136 F.2d 986 (2d Cir. 1943). We conclude, therefore, that the bankruptcy court abused the discretion vested in it by rule 724, Fed.R.Bankr.P., in denying the Commission permission to intervene.

Section 109(d) of the Bankruptcy Code, 11 U.S.C. § 109(d) (1978), provides that "[o]nly a person that may be a debtor under chapter 7 of this title, except a stockbroker or a commodity broker ... may be a debtor under chapter 11 of this title." The term "commodity broker" includes futures commission merchants, 11 U.S.C. § 101(5) (1978). The definition of futures commission merchant under the Bankruptcy Code is adopted from the Commodity Exchange Act, 11 U.S.C. § 761(8). Section 2 of the Act defines the term to include

> individuals, associations, partnerships, corporations, and trusts engaged in soliciting or in accepting orders for the purchase or sale of any commodity for future delivery on or subject to the rules of any contract market and that, in or in connection with such solicitation or acceptance or orders, accepts any money, securities or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may or secure any trades or contracts that result or may result therefrom.

7 U.S.C. § 2 (1980).

The bankruptcy court concluded, upon application of this definition to Co Petro, that the debtor was not a futures commission merchant and was not precluded from reorganizing under chapter 11. The court reasoned that "the futures contracts entered into by Co Petro were not sold on or subject to the rules of any contract market." Thus, although the bankruptcy court found, as did the district court, that Co Petro was engaged in the sale of commodity futures contracts, it found that because Co Petro did not sell those contracts subject to the rules of a contract market and was not registered under the Act it did not fall within the Act's definition of futures commission merchant.

■ The court's mechanical application of the definition constitutes reversible error. The definitional requirement that the contracts be offered or sold on or subject to the rules of a contract market is what makes the transaction legal, compliance with the requirement does not, however, determine the nature of the transaction. *See In re Stovall*, [1977–1980 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 20,941 at 23,779 (C.F.T.C.1979). Consequently, an entity engaging in activity subject to regulation under the Commodity Exchange Act cannot claim immunity from the regulatory provisions of the Act merely because it conducts its transactions outside the regulated markets. *See Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 282 (9th Cir. 1979). Thus, the bankruptcy court's conclusion that the debtor was not a commodity futures merchant because the court mistakenly believed that dealings outside the regulated markets precluded finding that the debtor was included within the Act's definition was erroneous.

■ The uncontested record in the proceeding below establishes that the debtor was a futures commission merchant. The evidence presented at the hearing before the bankruptcy court indicates that the debtor sold commodity futures contracts to the public and accepted money to secure those contracts. The debtor is therefore precluded from reorganizing under chapter 11 of the Bankruptcy Code. 11 U.S.C. § 109(d) (1978).

REVERSED AND REMANDED to the bankruptcy court with direction to enter an order dismissing the chapter 11 reorganization.