In re CASH CURRENCY EXCHANGE, INC., et al., Debtors.

CASH CURRENCY EXCHANGE, INC., et al., Plaintiffs,

v.

Donald C. SHINE, Receiver, Defendant.

Nos. 83 C 2640, 83 C 2641, 83 C 3015, 83 C 3016, 83 C 3017, 83 C 3021 (83 B 1933 thru 83 B 1989) (83 A 0499).

United States District Court, N.D. Illinois, E.D.

Jan. 27, 1984.

Nicholas B. Dozoryst III, Abraham Brustein, David K. Welch, Dozoryst & Brustein, Chicago, Ill., for debtor.

David R. Heroy, Stephen R. Bedell, Bardner, Carton & Douglas, Chicago, Ill., for trustee.

David Brown, Asst. U.S. Trustee, Chicago, Ill., trustee.

Frank O. Wetmore II, Duane M. Kelley, Kevin J. Egan, James R. Vogler, Rosalind B. Hebert, Winston & Strawn, Chicago, Ill., for Travel Express Co., Inc.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

The primary issue in this case is whether a currency exchange can be a debtor under

Chapter 11 of the Bankruptcy Reform Act of 1978 ("Bankruptcy Code"). On February 10, 1983, 57 currency exchange corporations filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. Thirty-three of these currency exchanges were located in Illinois. A week prior to the filing of these bankruptcy petitions, the 33 Illinois exchanges had been placed under administrative receiverships pursuant to the Illinois Community Currency Exchanges Act, Ill.Rev.Stat. ch. 17 § 4802–4852 (1981) ("Act"). The Director also had filed 33 separate injunction actions to liquidate the exchanges pursuant to the Act. The Act regulates the operation of currency exchanges in Illinois, setting forth licensing, bonding and insurance requirements. The Illinois Director of Financial Institutions ("Director") is authorized to issue licenses to applicants and generally administer the various provisions of the Act. If the Director determines that any licensee is insolvent or is violating the Act, the Director is authorized to appoint a receiver to take possession and title to the books, records and assets of the exchange. *Id.* at § 4825. The receiver may operate the exchange until the Director determines that possession

should be restored to the licensee or that the business should be liquidated. *Id.* at §§ 4825 & 4826. Until possession of a currency exchange is turned back to the licensee or until a liquidation proceeding is complete, the Director or the Director's receiver controls the exchange's assets.

In the instant case, the Director's receiver was in control of the 33 currency exchanges when the exchanges filed Chapter 11 petitions. The debtor-exchanges therefore sought an order requiring the Director's receiver to turn over the property of the exchanges to the bankruptcy trustee. The Director sought and was granted leave to intervene in these turnover proceedings and the 33 Chapter 11 petitions, although on a limited basis. The bankruptcy court subsequently ordered the Director's receiver to turn over the property of the exchanges to the bankruptcy trustee and denied the Director's motion to dismiss the 33 Chapter 11 petitions. The Director appeals from these orders to this court.[1]

■ The thrust of the Director's argument focuses on § 109 of the Bankruptcy Code.[2] Section 109 of the Bankruptcy Code

---

1. Specifically the Director appeals from three orders entered within the Chapter 11 proceedings and three orders entered within the adversary proceeding applying for turnover of property of the estates to the bankruptcy court: *83 C 2640* Appeal from the order dated 2–18–83 entitled Order for Appointment of Trustee; *83 C 2641* Appeal from the order dated 2–18–83 limiting intervention in the Chapter 11 petitions on the terms set forth in the record on 2–18–83; *83 C 3021* Appeal from the order dated 2–18–83 denying the Director's Motion to Dismiss Certain Chapter 11 Petitions and In the Alternative to Abstain. *83 C 3015* Appeal from the order dated 2–18–83 limiting intervention in the adversary proceeding entitled Application on the terms set forth in the record on 2–18–83; *83 C 3016* Appeal from the order dated 2–23–83 entitled Order for Turnover; *83 C 3017* Appeal from the order dated 2–18–83 denying the Director's Motion to Strike and Dismiss Adversary Proceeding Entitled Application to Compel Custodian to Turnover Property Of The Estate.

2. Pointing to *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which found constitutional infirmities in the Bankruptcy

Code's jurisdictional provisions, the Director also argues that the bankruptcy court did not have jurisdiction over the 33 Chapter 11 petitions. This contention must be rejected. Under *Lear Colorprint Corp. v. Enco Manufacturing Co.,* 29 B.R. 438 (N.D.Ill.1983), district courts have jurisdiction under 28 U.S.C. § 1334. On December 20, 1982 the District Court for the Northern District of Illinois adopted a General Order, referring bankruptcy matters to bankruptcy judges of the district. This court finds that the bankruptcy court's jurisdiction is proper under *Lear* and the General Order of December 20, 1982. 28 U.S.C. § 1334 gives federal courts original jurisdiction of all matters and proceedings in bankruptcy. This jurisdictional grant remains effective during the transitional period before the scheduled establishment of the new bankruptcy courts under the Bankruptcy Reform Act of 1978. §§ 404 & 405 of the Bankruptcy Reform Act of 1978. Although *Northern Pipeline* found constitutional infirmities in the new bankruptcy courts, 28 U.S.C. § 1334 still remains in effect and thus federal jurisdiction over bankruptcy matters also remains viable. This jurisdiction was properly delegated to the bankruptcy courts by the General Order of December 20, 1983 for the Northern District of Illinois. *See*

defines who may be a debtor under the various chapters of the Code, 7, 9, 11 and 13. The section states, in relevant part.

(b) A person may be a debtor under chapter 7 of this title only if such person is not—

1. a railroad;

2. a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union; or

3. a foreign insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union, engaged in such business in the United States.

\* \* \* \* \* \*

(d) Only a person that may be a debtor under chapter 7 of this title, except a stockbroker or a commodity broker, and a railroad may be a debtor under Chapter 11 of this title.

The Director maintains that currency exchanges perform financial services and are regulated by the state of Illinois in a manner substantially equivalent to those entities listed in § 109(b)(2). Because of these similarities between the banks and banking institutions listed in § 109(b)(2) and currency exchanges, the Director concludes that currency exchanges are within the purpose of § 109(b)(2) and cannot be debtors under chapters 7 or 11 of the Bankruptcy Code. After examining relevant cases and carefully weighing the arguments presented, this court concludes that a currency exchange does not fall within § 109(b)(2) and may be debtor in a Chapter 11 proceeding.

## DETERMINING WHAT ENTITIES ARE EXCLUDED UNDER § 109(b)(2)

In determining whether a particular corporation is an excluded corporation under § 109(b)(2), courts have used two approaches: (1) a state classification based upon the law of the state of incorporation, and (2) an independent classification test based upon the court's own construction of the Bankruptcy Code. 2 King, Klee, Levin, Miller and Murphy, Collier on Bankruptcy § 109.02 (1983). [hereinafter cited as Collier's 15th ed. 1983].

■ Under the state classification test, the court determines the corporation's status by examining the law of the state of incorporation. If the state statute denominates the corporation as one which the Bankruptcy Code excludes, the corporation cannot be a debtor under the Bankruptcy Code.[3] If the statute is not definitive, the court will more closely examine the substance of the statute, especially the powers given the corporation under the statutory scheme. In some instances, a comprehensive statutory liquidation scheme may indicate that the corporation is to be excluded from the reach of the Bankruptcy Code, although statutory provision for state supervised liquidation does not necessarily bring a corporation within the exclusionary language of § 109. *Id.* If an examination of the state statute indicates that the state does not equate the corporation in question with corporations in the excluded class, the corporation is a proper debtor.

■ Under the second, independent classification test, the court defines the words of the bankruptcy statute itself and then determines if the corporation in question falls within the defined words. Cases employing the independent classification test have utilized a common sense approach, guided by legislative history and rules of statutory construction. *In re Prudence,* 79 F.2d 77, 79 (2d Cir.1938); *State of Kansas ex rel. Boynton v. Hayes,* 62 F.2d 597, 598 (10th Cir.1932); *Gamble v. Daniel,* 39 F.2d 447, 450 (8th Cir.1930).

*In re UNR Industries, Inc.,* 725 F.2d 1111, 1115 (7th Cir.1984). *See also In re Northland Point Partners,* 26 B.R. 1019 (D.C.E.D.Mich.1983).

**3.** Although the state classification test is more favored by courts, this does not mean that state law is followed literally without regard for the real activities of the corporation. 2 Collier's 15th ed. 1983 § 109.02.

In the instant case, applying either test, the entities in question do not fall within the § 109(b)(2) exclusion and are therefore proper debtors in a Chapter 11 proceeding. Under the state classification test, currency exchanges are not defined as banking institutions nor are they so similar to banking institutions as to fall within the exclusionary language of § 109(b)(2). Currency exchanges possess very different and more limited powers under the Currency Exchanges Act than banks and banking institutions possess under the Illinois Banking Act, Ill.Rev.Stat. ch. 17 §§ 301–394 (1981) (Illinois Banking Act). In addition, the statutory liquidation provisions governing currency exchanges are more meager and limited than the comprehensive liquidation provisions governing banks and banking institutions. All these factors indicate that the state of Illinois does not classify currency exchanges as banking institutions or their substantial equivalent. Similarly, under the independent classification test, the words of the Bankruptcy Code itself do not indicate that Congress intended to include in § 109(b)(2) entities which function like the Illinois currency exchanges at issue herein.

### State Classification Test

Applying the state classification test, several circuits have refused to find that a particular entity fell within § 109(b)(2)'s exclusion because the entity rendered some services similar to the services rendered by a bank. In *Gamble v. Daniel*, 39 F.2d 447 (8th Cir.1930), for example, the state of Nebraska argued that a trust company was a banking corporation and thus excluded from being a debtor under the bankruptcy law.[4] Under Nebraska law, the trust company was empowered to do several of the essential and usual things that banks could do. The court found that simply because the trust company and banks carried out similar activities, the trust company did not become a banking corporation under state law. The court looked to the state statute

defining and regulating banks and found that deposits were an integral part of the business of banks; under state law banks were authorized to receive deposits, required to hold cash reserves based upon deposits, interest payable on deposits was specified, guaranty funds for depositors were specified and reports regarding deposits were required. Although the statute defining and regulating trust companies authorized a trust company to carry on many functions performed by banks, a trust company was not permitted to receive deposits in a banking sense. Therefore, the court concluded that the trust companies in question were not banking institutions under the state statute. The court affirmed the bankruptcy court's order requiring state officers charged with liquidating the trust company to turn over the property of the trust company to the receiver appointed by the bankruptcy court. *Accord In re Prudence,* 79 F.2d 77, 79 (2d Cir.1938).

In the instant case, as in *Gamble,* the currency exchanges in question are not empowered to receive deposits as are the state banks organized under the Illinois Banking Act. The Illinois Banking Act, in the section entitled "Formation and primary powers," provides:

> 3. It shall be lawful to form banks, as herein provided, for the purpose of discount and deposit, buying and selling exchange and doing a general banking business, excepting the issuing of bills to circulate as money; and such banks shall have the power to loan money on personal and real estate security, and to accept and execute trusts, and shall be subject to all of the provisions of this Act.

*Id.* at § 309. The Banking Act thus specifies that the primary powers of a bank are to receive deposits and loan money. *See also Knass v. Madison,* 354 Ill. 554, 188 N.E. 836 (1934). Moreover, other banking institutions regulated by the Illinois Banking Act, namely savings and loan associations

---

**4.** Cases decided under the prior Bankruptcy Act of 1898 are applicable to proceedings under the new Bankruptcy Code unless the legislative history of the new Bankruptcy Code indicates otherwise.

and credit unions [5], are also empowered to receive deposits and loan money. *See* Savings and Loan Act, Ill.Rev.Stat. ch. 17 §§ 3001–3293 (1981); Credit Union Act, Ill. Rev.Stat. ch. 17 §§ 4401–4471 (1981).

In contrast, the Community Currency Exchanges Act, Ill.Rev.Stat. ch. 17 § 4802–4852 (1981), defines a currency exchange as an entity:

> [E]ngaged in the business or service of, and providing facilities, for cashing checks, drafts, money orders or any other evidences of money acceptable to such community currency exchange, for a fee or service charge or other consideration, or engaged in the business of selling or issuing money orders under his or their or its name, or any other money orders (other than United States Post Office money orders, Postal Telegraph Company money orders, or Western Union Telegraph Company money orders), or engaged in both such businesses, or engaged in performing any one or more of the foregoing services.

*Id.* at § 4802. In describing the powers of a currency exchange, the Act specifically prohibits an exchange from accepting deposits to be returned to the depositor or upon the depositor's order:

> Powers of community currency exchanges
>
> § 3. No community or ambulatory currency exchange shall be permitted to accept money or evidences of money as a deposit to be returned to the depositor or upon the depositor's order. . . .

*Id.* at § 4804. The Act is also bereft of any provision empowering a currency exchange to loan money.

Like the trust companies in *Gamble,* the currency exchanges in the instant case are not empowered to receive deposits as are the banks organized under the state banking act. In fact, currency exchanges in question are specifically prohibited from accepting deposits, the one activity which the courts have consistently recognized as the hallmark of a banking institution. Because a currency exchange cannot accept deposits, it more closely resembles those corporations specifically found not to be banks or banking institutions under § 109(b)(2) of the Bankruptcy Code.

Indeed, the Illinois Supreme Court has also acknowledged that because a currency exchange lacks the power to accept deposits, it is not a banking institution. In *McDougall v. Lueder,* 389 Ill. 141, 58 N.E.2d 899 (1945), the court found that the enactment of the Community Currency Exchanges Act of 1943 was within the police power of the state. Several currency exchange operators had challenged the Act on constitutional grounds. The operators claimed, *inter alia,* that prohibiting a currency exchange from accepting deposits to be returned upon the depositor's order and from acting as a bailee or agent to hold money for payout upon order deprived them of equal protection of the laws. The Illinois Supreme Court responded:

> To allow the currency exchanges to engage in such activities would be to allow them to engage in the banking business without regulations and responsibilities thereupon.

*Id.* at 151–52, 58 N.E.2d at 904. Thus, not only have federal courts recognized that the ability to accept deposits to be returned upon the depositor's order is the hallmark of a banking institution, but Illinois' highest court has reached the same conclusion in defining a statutory provision quite similar to the one at issue herein.[6]

---

**5.** The state points out that the Financial Institutions Code, Ill.Rev.Stat. ch. 17 § 104 (1981), includes currency exchanges and credit unions within the definition of the term "financial institutions". The state argues that since the two terms are similarly defined and credit unions are explicitly excluded from the Bankruptcy Code, that currency exchanges must also be excluded from bankruptcy. This argument overlooks the fact that credit unions may receive deposits while currency exchanges cannot.

**6.** The United States Supreme Court has similarly recognized that the power to accept deposits is the essential characteristic of a banking business. In *Oulton v. German Savings & Loan Society,* 17 Wall 109, 118–9, 21 L.Ed. 618 (1873), the court stated:

In light of the consistent judicial agreement that the hallmark of a bank is the ability to accept deposits, the Director's argument that because currency exchanges are authorized to cash checks and issue money orders, as banks may also do, misses the point. The Director points out that the Illinois Banking Act defines a banking house, in part, as a place at which deposits are received "or checks paid." Ill.Rev.Stat. ch. 17 § 302. The Director asks this court to infer that since check cashing is a banking business, and check cashing is also carried on by currency exchanges, a currency exchange is a banking business. This argument, however, oversimplifies. Although a currency exchange is authorized under the Act to cash checks, issue money orders and offer several other services that banks may also offer, such similarity in authorization does not mean that the exchanges are the equivalent of a bank under state law. Today, in a sense, the line between banking institutions and entities that perform some banking functions may be somewhat blurred, checks may be cashed at the grocery store or at "cash stations" located on street corners and in retail stores, travelers checks may be purchased from vending machines. Yet the essential attribute of a bank or banking institution under Illinois law is the ability to accept deposits to be paid upon the depositor's order. A currency exchange lacks this ability and therefore is not classified as a bank or banking institution under Illinois law.[7]

Beyond this, in determining the nature of an entity under the state classification test, courts also look to whether the state provides a comprehensive regulatory machinery for liquidation of the entity at issue. 2 Collier's 15th ed. 1983 § 109.02. In some instances, a comprehensive liquidation scheme may indicate that the state desires to protect a strong public interest by overseeing the liquidation of a particular entity. In formulating exclusions to the Bankruptcy Code, Congress intended to exclude entities subject to such comprehensive state liquidation provisions because they are bodies for which alternate liquidation provisions are made under various state regulatory laws. H.R.Rep. No. 595, 95th Cong., 1st Sess. 318 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 31 (1978), U.S.Code Cong. & Admin.News, p. 5787.

In the instant case, the Currency Exchanges Act does contain provisions for liquidation of an exchange by the Director. Section 4825 of the Act allows the Director to appoint a receiver to handle claims against an exchange if the Director determines that any licensee is insolvent or violating the Currency Exchanges Act. The receiver may operate the exchange until the Director determines possession should be turned over to the licensee or that the business should be liquidated. Section 4826 provides for liquidation under court supervision. Sections 4827, 4829 and 4830 provide for payment of dividends upon money collected by the receiver, the disposition of actions pending against an exchange, and the disposition of the books and records of the receivership. Section 4828 outlines the powers of the receiver.

These six sections of the 52 section Currency Exchange Act stand in stark contrast to the expansive provisions of the Illinois Banking Act. Twenty-three sections of the Banking Act address the liquidation or dissolution of a state bank. Ill.Rev.Stat. ch. 17 §§ 362–386. Moreover, § 362 provides that the power of the State Commissioner of Banks to institute proceedings for and direct the liquidation of state banks shall be exclusive. The section states, in pertinent part,

---

Strictly speaking, the term bank implies a place for the deposit of money as that is the most obvious purpose of such an institution. *See also, Auten v. United States National Bank,* 174 U.S. 125, 141, 19 S.Ct. 628, 634–35, 43 L.Ed. 920 (1898).

**7.** Currency exchanges may also offer such services as food stamp distribution, public aid

check distribution, utility service contracts, license plate distribution, city sticker distribution, notary service, sale of travelers checks, photostat service and income tax service. (See Brief and Argument For Intervenor and Defendant-Intervenor Appellant at p. 28 n. 7). Most such services are not banking services.

Except as authorized by the authority of the Commissioner, represented by the Attorney General, no complaint shall be filed or proceedings commenced in any court for the dissolution or for the winding up of the affairs or for the appointment of a receiver ....

Notably, the Director of Financial Institutions is not granted such exclusive power under the Currency Exchange Act. *See also* Ill.Rev.Stat. 17 § 106(3) (1981).

Similarly, provisions for the dissolution and liquidation of Illinois savings and loan associations, Ill.Rev.Stat. ch. 17 §§ 3221–3267 (1981), and insurance companies, Ill. Rev.Stat. ch. 73 §§ 799–833 (1965 & Supp. 1983–84), are also much more comprehensive than the liquidation provisions governing currency exchanges, indicating that the Illinois legislature did not view currency exchanges and the banking institutions excluded by § 109(b)(2) of the Bankruptcy Code as substantially equivalent entities. *See First American Bank & Trust Co. v. George,* 540 F.2d 343 (8th Cir.1976).

In the same vein, the Director argues that the public or quasi-public nature of currency exchanges bolsters his position that a currency exchange is substantially equivalent to a bank. Courts have recognized that entities excluded under § 109(b)(2) usually share three common characteristics: extensive state regulation, extensive statutory procedures for liquidation, and a business which is public or quasi-public in nature. *E.g., First American Bank & Trust Co. v. George,* 540 F.2d 343 (8th Cir.1976). The public or quasi-public characteristic, however, cannot be considered in isolation. As the cases have noted, the public or quasi-public factor is found in conjunction with extensive state regulation and extensive liquidation procedures. See *id.; In re Portland Metro Health,* 15 B.R. 102 (Bkrtcy.D.Or.1981). In the instant case, these elements are lacking and public interest alone cannot carry the day. This court certainly recognizes that the activities

of a currency exchange affect the public interest, especially in light of the fact that in many areas of the state, where banks are sparse, currency exchanges perform essential services like check cashing and the issuance of money orders. The licensing, insurance and bonding requirements of the Illinois Currency Exchanges Act protect the public interest. State actions against a debtor to enforce requirements such as these will not always be prohibited. For example, license revocation proceedings brought to recover a state granted license will not always be prevented even though the licensee is a debtor in a bankruptcy proceeding. In the case of *In re Thomassen,* 15 B.R. 907 (Bkrtcy.App. 9th Cir.1981), the court found that license revocation proceedings against an allegedly incompetent and dishonest doctor would not be stayed since the revocation proceedings related directly to the health and safety of the public. If state regulatory actions protect the public, the state may proceed against a debtor without regard to the debtor's position in bankruptcy court. *Id.; see also, In re Lare,* 23 B.R. 545 (Bkrtcy.D.Md.1982), *aff'd,* 24 B.R. 959 (D.C.D.Md.1982). The liquidation procedures of the Act, however, do not vindicate the public interest, but the rights of creditors. *See In re Thomassen,* 15 B.R. 907 (9th Cir.Bkrtcy.App.1981). Thus, enforcement of the Bankruptcy Code simply does not violate the public interest under the circumstances of the instant case, nor does it interfere with state police or regulatory powers as the Director contends.[8]

### *Independent Classification Test*

■ Looking to the language of § 109 itself under the independent classification test, this court finds that the Illinois currency exchanges at issue do not fall within the exclusionary language of § 109(b)(2). The language of § 109, specifying which entities may be debtors under Chapters 7 and 11 of the Bankruptcy Code is very broad. 2 Collier 15th ed. 1983 § 109.02. The entities

---

**8.** The Director does not contend that any individual consumers of currency exchanges services have lost money or been injured by the insolvency of the exchanges. (Hearing, January 9, 1984).

excluded are few in number and are specifically enumerated. In light of the broad language of § 109 and the specific enumeration of exceptions in § 109(b)(2), this court finds no basis for concluding that entities beyond those specifically excluded should also be excluded. The general rule of statutory construction is that the enumeration of exclusions from the operation of a statute indicates that it should apply to all cases not specifically excluded. *Expressio unius est exclusio alterius.* 2A Sutherland Statutory Construction § 47.23 (1973 & Supp.1983). (citing cases). There is no indication in the language describing the banking entity exclusion or in the policy stated in the legislative history of the statute that Congress did not intend for this rule of statutory construction to apply. *See id.* at § 47.25.[9]

Moreover, the entities excluded under § 109(b)(2) are essentially the same entities that were excluded under Section 4a of the prior Bankruptcy Act. Relevant cases interpreting this former similar provision have concluded, in determining what entities are excluded from the bankruptcy laws, that words should be given their natural meaning. *E.g., Gamble v. Daniel,* 39 F.2d 447 (8th Cir.1930). The excluded entities relevant for purposes of this case are a "bank, savings bank, savings and loan association, building and loan association, homestead association or credit union." 11 U.S.C. § 109(b)(2). As previously discussed, all of these organizations are empowered under state law to perform the essential function of a bank, acceptance of deposits. Although Collier notes that the expansive language regarding banks and similar entities was chosen to insure that the excluded entities would be stated in terms current with modern banking laws, the language does not purport to exclude entities that do not perform a banking business. *See* 2 Collier's 15th ed. 1983 § 109.03. Although

currency exchanges, as noted, may perform several activities that banks also perform, currency exchanges do not perform and are not permitted to perform a banking business. There is no reason based upon logic or common sense to extend the meaning of the terms described beyond their natural meaning to include Illinois currency exchanges.

### Illinois Law Regarding Receiverships

■ The Director also points to the Illinois law governing administrative receiverships in support of his position that the bankruptcy court had no jurisdiction to entertain Chapter 11 petitions of Illinois currency exchanges. The cases cited by the Director establish that an administrative receiver is an executive officer appointed by a state official pursuant to a state statute. *People v. Niehaus,* 356 Ill. 104, 190 N.E. 349 (1934). Under Illinois law, when an administrative receiver has been appointed and vested with title and control of property under state law, a court does not have the inherent authority to appoint its own receiver. *Id.* The cases also establish that an administrative receiver appointed under an Illinois Banking Act had exclusive control over the assets of the bank and all of its debts, claims and causes of action. *McIlvaine v. City National Bank and Trust Co.,* 314 Ill.App. 496, 42 N.E.2d 93 (1942). In such circumstances a stockholder of the bank was not able to bring a derivative suit in the name of the bank because all of the bank's rights became vested exclusively in the receiver. *Id.*

Based upon the reasoning of these cases, the Director argues that since he had appointed administrative receivers for the 33 Illinois currency exchanges at issue, no court had jurisdiction to substitute another receiver for the Director's receiver. More-

---

**9.** The rules of statutory construction set forth in the Bankruptcy Code also support this conclusion. Section 102(3) of the Code specifies that the use of the words "includes" and "including" are not limiting. As Travelers Express Company, Inc., the largest creditor of the currency exchanges, points out in its brief,

Congress could have used these words in describing who may be a debtor under the Code, but did not. Hence, applying the usual rule of statutory construction does not violate the rules of statutory construction set forth in the Bankruptcy Code itself.

over, the Director contends that, since an administrative receiver's title to the assets is exclusive, the debtor had no power to file a Chapter 11 petition because all causes of action went to the receiver upon his appointment by the Director.

The Director's selective reliance upon state law to support the fact that the bankruptcy court lacked jurisdiction is not persuasive. In the first instance, the administrative receiver's title is relevant and valid for purposes of the receivership, but not for the purpose of determining the applicability of bankruptcy law to a particular debtor. Moreover, it is well-established that a corporation cannot be prevented by state statute from taking advantage of bankruptcy law. The power of Congress to establish uniform laws on the subject of bankruptcies is unrestricted and paramount. U.S. Const. art. I, § 8 cl. 4; *International Show Co. v. Pinkus,* 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318 (1929); *see In re Palazzolo,* 20 B.R. 692 (Bkrtcy.E.D.Mich. 1982). Thus, even if this court assumes that the Illinois cases discussing administrative receiverships deprive the currency exchanges of their right to avail themselves of the bankruptcy laws, such cases are not controlling. The Bankruptcy Code, not Illinois law regarding administrative receiverships, determines whether an Illinois currency exchange is a proper debtor in a Chapter 11 proceeding under the Bankruptcy Code. As previously noted, the 33 currency exchanges in the instant case are proper debtors in a Chapter 11 proceeding under the Bankruptcy Code.

Moreover, the Bankruptcy Code has provided for a situation like the instant case, where assets are in the hands of a third party prior to the filing of a bankruptcy petition. Section 101(10) of the Code recognizes that a third party may be acting to liquidate the assets of a debtor prior to the institution of bankruptcy proceedings. *See also* 2 Collier's 15th ed. 1983 § 101.10. Such a prepetition liquidator is termed a "custodian" by § 101.10 of the Code. Section 101(10) defines a custodian:

¶ 101.10. Custodian means—

(A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title:

(B) assignees under a general assignment for the benefit of the debtor's creditors; or

(C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors;

Obviously, such a definition is broad enough to encompass one characterized as an administrative receiver under state law. *See Flournoy v. City Finance,* 12 B.R. 106 (Bkrtcy.M.D.Ga.1981); Brody, Taggart & Lee, *Practicing Under The Bankruptcy Reform Act* § 7.11 (1979).

The cases cited by the Director, finding that a creditor in control of a debtor's assets is not a custodian, are not controlling. Such cases are based upon a recognition of the fact that a creditor in control of a debtor's assets is acting primarily for himself. A custodian, on the other hand, is a third party acting under mandatory authority who takes charge of the debtor's assets for the benefit of the debtor's creditors as a whole. *See e.g., In re Pride Foods, Inc.,* 22 B.R. 356 (Bkrtcy.DC Neb.1982). Although cases interpreting the meaning of "custodian" under § 101(10) are sparse because the section had no forerunner under the old bankruptcy act, and therefore only few recent cases exist, this court is satisfied that a custodian under § 101(10) includes both administrative and executive receivers. Interpretation of § 101(10) does not, under relevant cases, turn on state law classifications regarding receiverships. In light of this conclusion, the Director has no further basis to dispute that § 543(b), the turnover provision of the Bankruptcy Code, was properly applied to the state appointed receiver who was directed under that section to turn over the property of the 33 currency exchanges to the bankruptcy trustee.

*Automatic Stay*

The Director's final attack upon the jurisdiction of the bankruptcy court is based upon the considerations of federalism and comity that are built into the Bankruptcy Code.[10] First, the Director argues that the automatic stay provisions of § 362 of the Bankruptcy Code do not apply to the state liquidation proceedings instituted by the Director pursuant to § 4826 of the Currency Exchanges Act. Under §. 362, upon commencement of a bankruptcy proceeding, all judicial and non-judicial actions against the debtor or the debtor's property are stayed, with certain limited exceptions. One of the actions excepted from the stay are actions to enforce the police or regulatory powers of a governmental unit. § 362(b)(4).[11] The Director claims that the administrative receiverships instituted under the Currency Exchanges Act fall within this exception.

Contrary to the Director's position, the cases and the legislative history of the Code indicate that the exception relating to governmental police and regulatory power is to be construed narrowly. For example, in *Missouri v. U.S. Bankruptcy Court*, 647 F.2d 768 (8th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982), the court found that a state's regulatory grain laws directing a receiver to operate or liquidate the debtor's warehouse because of the debtor's insolvency did not fall within the § 362(b)(4) exception. Interpreting § 362(b)(4), the court stated:

> In light of the legislative history and court decisions under the earlier bankruptcy act, we believe that the term "police or regulatory power" refers to the enforcement of state laws affecting health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court.

647 F.2d at 776. Because the purpose of state proceedings at issue was to protect a pecuniary interest in the property of the debtor's estate, not the public health, welfare, morals or safety, the court found that the bankruptcy court had exclusive jurisdiction of assets which were also the subject of state proceedings. *See also In re Saugus*

---

**10.** The Director also challenges the bankruptcy court's order under § 1109(b) of the Code permitting the Director to intervene only upon a limited basis. The section operates in conjunction with Rule 24(b) of the Fed.R.Civ.P. and Rule 10–210 of the Bankruptcy Rules.

The section essentially provides that a party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee may raise and may appear and be heard on any issue in a Chapter 11 case. The section does not, however, limit who may be a party in interest and the section must be construed broadly. 5 Collier 15th ed. § 1109.02 A bankruptcy court has discretion to allow intervention in a Chapter 11 case by parties other than those specifically designated. *Id.* Thus, a party challenging jurisdiction of the bankruptcy court has been allowed to intervene in bankruptcy proceedings, *In re Petro Marketing Group*, 11 B.R. 546, 4 C.B.C.2d 1044 (Bankr. 9th Cir.1981), and a state with an interest in the operation of the debtor has also been permitted to participate. *In re Citizens Loan & Thrift Co.*, 7 B.R. 88 (Bkrtcy.N.D.Ia.1980). In the instant case, the state points out that the Director was permitted to intervene to the extent the Director felt that the state's interests were not being protected. (Tr. of bankruptcy proceedings, 2–18–83, pp. 9–10). In light of the fact that the Director was afforded such a wide range of participation in the bankruptcy proceedings and in view of the decision in the instant case, this court finds that the intervention afforded the Director was appropriate. 7a Wright and Miller, Federal Practice and Procedure § 1923 (1972 & Supp.1982); *see Crumble v. Blumthal*, 549 F.2d 462 (7th Cir.1977).

Moreover, once the appeals in the instant case were brought, this court required that the receiver and trustee consult with the Director to consider any objections or suggestions of the Director and to consult with the Director regarding the sale of the 33 currency exchanges located in Illinois.

**11.** Section 362(b)(4) provides:

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3), does not operate as a stay— (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power:

*General Hospital, Inc.,* 7 B.R. 347, 1 C.B. C.2d 26 (Bkrtcy.D.C.Mass.1979).

Similarly in the case of *In re Gencarelli,* 14 B.R. 751 (Bkrtcy.D.R.I.1981), the court found that a municipality's liquor license revocation proceedings were not within § 362(b)(4)'s exception. Referring to the legislative history of the section, the court followed the reasoning of *Missouri v. U.S. Bankruptcy Court* and found that an exception to the automatic stay would apply when a local governmental body sought to prevent or stop violation of fraud, environmental protection, consumer protection, safety or similar police or regulatory laws. Numerous other cases interpreting § 362(b)(4)'s exemption have similarly focused on whether the state proceeding at issue is designed to protect the public or is an action to protect a pecuniary interest in the property of the debtor's estate. *See* 2 Bankruptcy Service, Lawyers Edition, Code Commentary Analysis § 362 n. 75 (1979 & Supp.1983) (citing cases).

In the instant case, the sections of the Community Currency Exchanges Act which authorize liquidation under the Director's receiver, focus not on the protection of the public, but the payment of creditors. *See* Ill.Rev.Stat. ch. 17 §§ 4825 & 4826. The statute does not authorize liquidation proceedings against currency exchanges to stop fraud or for consumer protection, but to protect the pecuniary interests of creditors of the exchanges. Therefore, the state's administrative receivership does not fall within the § 362(b)(4) exception from the automatic stay.

### Burford Abstention

Finally, the Director argues that the bankruptcy court should apply Burford-type abstention and permit the proceedings instituted by the Director to continue. This court finds, however, that the policies underlying Burford-type abstention are particularly inapplicable to the circumstances of the instant case. Burford-

type abstention is appropriate where the state has a unified scheme for review of its administrative orders and federal intervention would have a disruptive effect on the state's efforts to establish a coherent policy on a matter of substantial public concern. Since this court has concluded that the liquidation and reorganization of Illinois currency exchanges is properly governed by the Bankruptcy Code, any claim of a disruptive effect upon state liquidation proceedings is not dispositive. Neither state law nor the policies behind abstention can operate to deprive a proper debtor of his right to seek relief under the Bankruptcy Code.

The cases cited by the Director in support of his claim for abstention involve conflicting state and federal common law liquidation proceedings. None of the federal proceedings were being administered under the bankruptcy laws, as in the instant case. Moreover, all the cases involve organizations specifically excluded from the reach of the bankruptcy laws, i.e., insurance and banking institutions. In each case the court found that liquidation under comprehensive state banking or insurance liquidation provisions would better serve the state and federal interests involved. In the instant case, however, as this court has already concluded, the liquidation provisions of the Community Currency Exchanges Act are unlike the liquidation provisions applicable to banks and insurance companies. In view of this conclusion, Burford abstention would be particularly inappropriate.

In addition to Burford abstention, the Bankruptcy Code also contains an abstention provision, § 305(a). Under § 305(a) a bankruptcy court is permitted to order dismissal of a case or suspend all proceedings if the interests of creditors and the debtor would be better served by such action. *In re Bailey's Beauticians Supply Co.,* 671 F.2d 1063 (7th Cir.1982). To the extent that the Director's argument is an attack on the propriety of the bankruptcy court's refusal to abstain, it must also fail.[12]

---

**12.** Although the bankruptcy court's decision under § 305(a) is nonreviewable by appeal or otherwise under § 305(c), an appeal of the or-

der is proper where, as here, the appeal raises a jurisdictional issue. *Farmer v. First Virginia Bank,* 22 B.R. 488 (E.D.Va.1982). Moreover, in

Abstention pursuant to § 305 is usually ordered where a proceeding in progress at the time of the bankruptcy filing is found to serve all parties better than a bankruptcy action. By its refusal to abstain in the instant case, the bankruptcy court impliedly and correctly concluded that the pending state proceeding did not better serve the parties. As previously discussed, the liquidation provisions of the Currency Exchanges Act are sparse. The Act does not provide many of the advantages available to creditors under the Bankruptcy Code; maintenance of the estate while reorganization is pending; sale of the exchanges as going businesses; protection from creditor action during reorganization; and the beneficial avoidance powers of the trustee.[13] The bankruptcy's court's refusal to abstain was therefore proper.

For the reasons stated in the foregoing opinion, the orders of the bankruptcy court in the above-captioned appeals are affirmed. All appeals pertinent to the legal questions involved in this proceeding are therefore resolved.[14] This order finally resolves questions regarding jurisdiction, turnover of property, appointment of a trustee, intervention, and also resolves differing interpretations of fundamental provisions of the Bankruptcy Code. Because of its final nature, this court believes that an appeal of this order as a final order should be available under the Bankruptcy Reform Act of 1978, 16 Wright, Miller, Cooper & Gressman, Federal Practice and Procedure § 3926 (Supp.1982); see Universal

Mineral, Inc. v. C.A. Hughes & Co., 669 F.2d 98 (3d Cir.1981); Matter of Brissette, 561 F.2d 779 (9th Cir.1977). Appeal may also be available under 28 U.S.C. § 1291 as a final decision of a district court. See In re UNR Industries, Inc., 725 F.2d 1111, passim (7th Cir. Jan. 17, 1984), or under the collateral order doctrine enunciated in Cohen v. Beneficial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). As the court noted in Cohen, § 1291 should be given a practical rather than a technical construction and orders which determine important rights collateral to the underlying controversy will not be denied review until the underlying controversy is finally adjudicated. See UNR Industries, at 1116. But because the appeal procedure from the judgment of a district court in a bankruptcy appeal has been left in such a "sorry state of uncertainty," Wright, Miller, Cooper & Gressman, supra at § 3926, this court alternatively finds that an appeal under 28 U.S.C. § 1292(b) should be available in the interest of justice. Therefore, this court is of the opinion that its order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation. By use of this language this court intends to certify this order for interlocutory appeal pursuant to § 1292(b). See Richard Hewitt and Kenneth Higgins, Jr. v. Joyce Beverages of

light of the decision in Northern Pipeline Construction Co. v. Marathon Pipeline Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), finding infirmities in the bankruptcy court's jurisdiction, the district court is authorized under the General Order of December 20, 1982 adopted by the Northern District to make a de novo review of orders or judgments of bankruptcy judges.

13. The main creditor of the currency exchanges at issue, Travelers Express Company, Inc., supported the filing of this case under the Bankruptcy Code. Travelers recognized the many benefits which would flow to itself and all creditors in the bankruptcy setting. (Brief and Argument For Travelers Express Company, Inc. at pp. 23–24).

14. The Motion to Strike the Affidavit of Donald Shine because it constitutes new evidence raised for the first time on appeal is denied. Under the General Order of December 20, 1982, adopted by the District Court for the Northern District of Illinois, this court may receive such evidence on appeal as it deems appropriate. The affidavit, however, was not considered by this court in formulating this order.

The Director's motion to waive oral argument and for an expedited ruling was granted on 12–13–83. (83 C 2640) The Director's motion to stay all bankruptcy proceedings until our ruling was denied on 12–13–83 (83–C–2640).

*Wisconsin, Inc., and Joyce Beverages of Illinois, Inc.,* 721 F.2d 625 (7th Cir.1983).[15]

It is so ordered.

15. This court also notes that an appeal might also be possible under 1292(a)(2), which provides for appeals of interlocutory orders appointing receivers or to take steps to accomplish the purposes thereof since the Director's appeal centers around an order appointing a bankruptcy trustee and ordering the Director to turn over the property of the exchanges to the bankruptcy trustee.